Murphy v. Franklin Pierce          CV-93-65-B     11/17/94 P

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Nancy D. Murphy

        v.                                    Civil No. C-93-65-B

Franklin Pierce Law Center


**MEMORANDUM AND ORDER**


Nancy Murphy suffers from a chronic vision impairment known as diplopia.[1]  After being dismissed as a Franklin Pierce Law School student, she sued the Law Center alleging that she was the victim of unlawful discrimination on the basis of her disability and sex in violation of § 504 of the Rehabilitation Act of 1973, 29 U.S.C.A. § 794 (West Supp. 1994), Title IX of the Education Amendments of 1972, 20 U.S.C.A. § § 1681 and 1682 (West 1990), and the Fourteenth Amendment's Equal Protection Clause.  She also alleged that the Law Center's discharge procedures violated her rights under the Fourteenth Amendment's Due Process Clause and state contract law.  The matter is before me on the parties' cross-motions for summary judgment.

---

[1]Diplopia is caused by congenital weakness of the muscles controlling convergent focus of the eyes.  According to the plaintiff, this condition severely hinders her ability to focus on printed material.

## I.  **FACTS**

### A.  **Franklin Pierce Law Center**

Franklin Pierce Law Center is a private, nonprofit corporation that receives some federal financial assistance.  The Law Center does not offer a part-time program and, with limited exceptions, it requires students to complete their degree requirements within three years.

Franklin Pierce publishes rules that limn its academic requirements and procedures for disciplinary action.  The rules require that students must maintain a grade point average ("GPA") of 2.00 or higher, earn at least eighty-four credits, with no more than nine of those credits falling below a grade of C-, and satisfy any terms of academic probation.  If a student fails to meet these minimum standards, he or she is subject to the oversight of the school's Academic Standards Committee.  Students within the Committee's jurisdiction may be placed on probation, suspended, or dismissed.  Probationary students must submit a plan to the Committee explaining their poor performance and offering recommendations for corrective action.  The Committee may accept, modify or reject a student's plan when setting probation terms.  It may also subject probationary students to revised eligibility requirements.

**B.  Murphy's First Year: Fall 1987 - Spring 1988**

Murphy disclosed her visual impairment in her admission application.  She described her condition as double vision that first manifested itself when she was a teenager.  She claimed that the condition worsened significantly after she was involved in an automobile accident during her second year of college.  After undergoing two surgical procedures and "ocular motility therapy," however, she claimed that she no longer needed eyeglasses and concluded that "I continue today to read well without impairment."  Murphy thus presented her condition as a hurdle that she had overcome rather than an impairment that would require accommodation upon admission.

Franklin Pierce admitted Murphy for the Fall 1987 term.  She took the same fifteen-credit course load as the other first year students, but was placed on probation after her second semester because her cumulative GPA was below 2.00.  In accordance with the Law Center's rules, Murphy submitted a corrective action plan to the Academic Standards Committee.  She did not allege that her low GPA had been caused by her visual impairment.  Instead, she attributed her performance to poor test taking skills, panic when taking exams, "culture shock," and a thyroid condition.

The Committee responded by accepting Murphy's proposed class schedule for the fall term. In light of her self-described "panic," however, the Committee required her to take practice exams throughout the semester. It also informed her that she must earn no grade less than C-, achieve at least a 2.00 GPA for the fall semester, and raise her cumulative GPA to 2.00 by the end of her second year. Finally, in commenting upon her thyroid condition, the Committee informed her that "[f]or our part, while sympathetic to the health problems you have, and willing to consider accommodations before health problems impact on performance, we do not see them as a basis for lessening of standards and will not be able to waive these terms of probation should you come to us after the fact with the explanation that you could have done better except for ill health."

C. **Murphy's Second Year: Fall 1988 - Spring 1989**

Murphy successfully completed her probationary requirements for the Fall 1988 semester, receiving a GPA of 2.08. However, the Academic Standards Committee required her to submit another corrective action plan at the end of her second year because she received a D in Evidence and thereby violated the Law Center's rule prohibiting students from having more than nine credits below C-.

4

Murphy alleged for the first time in her second corrective action plan that her academic difficulties were due in part to her visual impairment.  She also described her condition in detail and delineated her method of managing the condition through muscle therapy, diet, rest, reading time management, and the occasional use of prism lenses.  She further stated that her doctor recommended "being awake for three hours in the morning before reading, and sleeping when I have difficulty converging or when I experience muscle strain."[2]  Because Murphy claimed that her impairment caused her to experience pain and headaches, she requested three-day rest periods between exams to allow her time to rest and manage her reading schedule without strain.  She also stated "[a]lthough I have not previously brought this to the attention of the Academic Standards Committee, I did write briefly about the condition in my personal statement.  I also spoke about it with Professor Arpiar Saunders during my admission interview."

---

[2]In an August 11, 1989 letter, Murphy's doctor informed her: "I would suggest that you avoid situations that are particularly stressful to your eyes, such as taking several examinations in rapid succession.  As a matter of fact, it would be advisable that you break up your study and reading into well defined segments of time such as two hours at a time, or three hours at the most, and I hope that you will be able to avoid the development of headaches and assorted problems."

The Committee accepted Murphy's explanation for her poor performance and allowed her to return for a fifth semester. However, it again placed her on probation. This time, the Committee required her to achieve a GPA of 2.30 or higher for each semester of her third year, receive no D's or F's, and no more than one C- in either semester, and submit a proposed course schedule for the Committee's approval. The Committee also informed her that "if these conditions are not met, we will not entertain any new plans for rehabilitation, i.e., you will be dismissed if these terms are not met."

Murphy chose not to appeal the Committee's decision and instead began negotiations with the Committee concerning her fall courses. The Committee rejected her request to participate in a five credit clinical program with the public defender's office and informed her that she would need to achieve a 2.67 GPA if she elected to participate in the Law Center's Civil Practice Clinic. After being informed that the Dean had agreed to allow her to take a reduced course load, the Committee accepted her proposal to take courses in Criminal Law, Commercial Paper, Real Estate Transactions, and Estate Planning. The Commercial Paper course was a "mini course" with the final exam scheduled several weeks prior to the regular final exam period. She was to be graded on

6

a single exam in only one of the other three courses.  In the other two courses, class participation or papers were to be a significant part of her final grade.

D.  **Murphy's Fall 1989 Semester**

Murphy earned a 1.89 GPA for the fall term.  She received failing grades in both Commercial Paper and Real Estate Transactions, a C in Criminal Law, and an A- in Estate Planning. She was granted extra time to complete her Criminal Law and Real Estate Transactions exams.  Although she did not receive extra time for her Commercial Paper exam, she was allowed to retake the exam with extra time.  On her second try, she received a D.

Murphy was dismissed as a student on February 8, 1990, because the Law Center claimed that she had failed to meet the terms of her probation and otherwise failed to successfully complete the requirements for the degree program.  Murphy timely appealed her dismissal and, for the first time, asked that the Law Center accommodate her disability by allowing her to take oral exams.

E.  **Murphy's Appeal to the Faculty Board and her Department of Education Complaint**

In denying Murphy's appeal, the Faculty Board concluded that

Murphy had been dismissed because she lacked the analytical

skills to succeed rather than because she was disabled.  In this

regard, the Faculty Board noted:

> There is a clear pattern in Ms. Murphy's transcript as
> a whole.  The only two courses in which she got A- are
> taught and evaluated in a special way.  In one, the
> examination is open book and take-home.  In the other
> there are class presentations of projects.  In both,
> the work is done in teams, the benefits of mutual
> instruction and learned cooperation being considered
> (in those courses) sufficient to outweigh the conceded
> risk of high grades for one or more team members who
> assent to the answers without understanding or is
> coached through a presentation.  Further, evaluation is
> based on what might be called the mastery method which
> anticipates most students will ultimately be correct on
> nearly every point and therefore nearly every
> conscientious group earns an A of some sort.
>
> The only B's in the transcript are in practicum-type
> courses largely if not solely evaluated on the basis of
> a series of exercises or clinical work.
>
> Every D, F, or C- on the transcript is in a traditional,
> conceptual subject with a final exam.  Ms. Murphy's <u>higher</u>
> grades in the basics are straight C's in Torts,

Constitutional Law, Business Associations, Criminal     Procedure
and Criminal Law.  Two D's and two C-'s were        earned in basic
courses in the first year -- <u>before Ms.</u>       <u>Murphy says her</u>
<u>vision became a problem</u>.

The Faculty Board also analyzed Murphy's exam answers and

concluded that the kinds of errors she repeatedly made in her

exams were "not errors of reading, nor the kind that more time on

an exam would cure."  Accordingly, the Faculty Board determined

that Murphy's failure to succeed was unrelated to her disability.

Murphy filed a complaint with the United States Department of Education, Office of Civil Rights ("OCR") on August 7, 1990. In response, OCR determined that Franklin Pierce had not violated § 504 of the Rehabilitation Act or its accompanying regulations, 34 C.F.R. § 104 (1992).

## II. DISCUSSION

### A. The Summary Judgment Standard

It is axiomatic that a court does not find facts in ruling on a motion for summary judgment. Instead, the court construes the evidence in the light most favorable to the non-movant and determines whether the moving party is entitled to judgment as a matter of law. Olivier v. Digital Equip. Corp., 846 F.2d 103, 105 (1st Cir. 1988). Less well understood is the effect that burdens of proof frequently have on the resolution of summary judgment motions.

If the party moving for summary judgment has the burden of proof at trial, the court will grant the motion only if: (1) the moving party initially produces enough supportive evidence to entitle the movant to judgment as a matter of law (i.e., no

reasonable jury could find otherwise even when construing the evidence in the light most favorable to the non-movant), and (2) the non-movant fails to produce sufficient responsive evidence to raise a genuine dispute as to any material fact. Fitzpatrick v. Atlanta, 2 F.3d 1112, 1115-17 (11th Cir. 1993). In contrast, if the non-movant bears the burden of proof, the court will grant the motion if: (1) the movant alleges that the non-movant lacks sufficient proof to support one or more elements of her case, and (2) the non-movant is unable to produce sufficient responsive evidence to withstand a motion for judgment as a matter of law. Id.; see also, Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991), cert. denied, 112 S. Ct. 2965 (1992). Thus, the amount and quality of the responsive evidence that the non-movant must produce to successfully resist a motion for summary judgment will depend upon whether the non-movant bears the burden of proof at trial. Fitzpatrick, 2 F.3d at 1115-17.

With these standards in mind, I turn to the merits of the cross motions for summary judgment.

**B. The Rehabilitation Act Claim**

A § 504 claimant must allege that she is (1) an "individual with a disability,"[3] (2) who is "otherwise qualified," and (3) who was denied participation in a program or activity receiving federal funds, (4) "solely because of her disability." Cook v. Rhode Island Dept. of Mental Health, Retardation & Hosp., 10 F.3d 17, 22 (1st Cir. 1993). In this circuit, the plaintiff bears the burden of proving all four elements of her § 504 claim. Id. But see Taub v. Frank, 957 F.2d 8, 10 (1st Cir. 1992) (noting that "the plaintiff bears the initial burden of establishing that he is entitled to protection under the Act"). Compare Teahan v. Metro-North Commuter R.R., 951 F.2d 511, 514 (2d Cir. 1991) (burden of proof remains with plaintiff but burden of production shifts to defendant once plaintiff establishes prima facie case), cert. denied, 113 S. Ct. 54 (1992), with Wood v. Omaha Sch. Dist., 985 F.2d 437, 438 (8th Cir. 1993) (burden of proof shifts

---

[3]The Act was amended in 1992 to substitute "disability" for "handicap." Pub. L. 102-569, § 102(p)(32). The Act's definition of "individual with a disability" includes "any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such impairment, or (iii) is regarded as having such an impairment." 29 U.S.C.A. § 706(8) (West Supp. 1994). The parties do not dispute that Murphy is disabled within the meaning of the statute.

11

to defendant once plaintiff establishes prima facie case) and Fitzpatrick, 2 F.3d at 1127 n.17 (same) and Smith v. Barton, 914 F.2d 1330, 1339 (9th Cir. 1990) (same), cert. denied, 501 U.S. 1217 (1991), and Arneson v. Heckler, 879 F.2d 393, 396 (8th Cir. 1989) (same on remand, 53 Fair Empl. Prac. Cas. (BNA) 963 (E.D. Mo. 1990), modified and rev'd on other grounds sub nom., Arneson v. Sullivan, 946 F.2d 90 (8th Cir. 1991)) and Treadwell v. Alexander, 707 F.2d 473, 475 (11th Cir. 1983) (same) and Pushkin v. Regents of Univ. of Colo., 658 F.2d 1372, 1387 (10th Cir. 1981) (same).

Franklin Pierce argues that it is entitled to summary judgment because Murphy cannot prove either that she was dismissed solely because of her disability or that she was otherwise qualified to complete her Law Center studies. I address each argument in turn.

### 1. Solely by reason of disability

Section 504 protects only those persons who are subjected to discrimination under federally funded programs solely because of their disabilities. 29 U.S.C.A. § 794(a). Thus, if a disabled person is denied participation in a program because she is unable to meet a facially neutral program requirement, she will not be entitled to relief under § 504 unless she can establish either

12

that the requirement was merely a pretext for unlawful discrimination, <u>Heilweil v. Mount Siani Hosp.</u>, 32 F.3d 718, 722 (2d Cir. 1994), or that she was unable to meet the requirement because of her disability, <u>Teahan</u>, 951 F.2d at 516.

Murphy concedes that Franklin Pierce dismissed her because she failed to meet both the Law Center's minimum grade requirements and the terms of her probation. Moreover, she does not contend that the Law Center established either its minimum requirements or her probation terms as a pretext for unlawful discrimination. Instead, she argues that she has a § 504 claim because her disability prevented her from meeting the requirements and probation terms. Ordinarily, a claim such as this raises a question of fact that cannot be resolved by a motion for summary judgment. <u>Id.</u> at 517. <u>But see</u> <u>McGregor v. L.A. Univ.</u>, 3 F.3d 850, 860 (5th Cir. 1993) (court affirmed grant of defendant's motion for summary judgment), <u>cert. denied</u>, 114 S. Ct. 1103 (1994). A plaintiff, however, cannot survive a motion for summary judgment challenging the sufficiency of a claim on which she bears the burden of proof at trial without offering <u>any</u> supporting evidence. <u>Wynne v. Tufts Univ. Sch. of Medicine</u>, 976 F.2d 791, 796 (1st Cir. 1992) (plaintiff may not rest upon

13

conclusory allegations when pretext is at issue), <u>cert. denied</u>, 113 S. Ct. 1845 (1993); <u>see also</u>, <u>Fitzpatrick</u>, 2 F.3d at 1115-17. Here, Murphy has not produced any evidence to counter the Law Center's substantial evidence suggesting that her failure to succeed was caused by her deficient analytical skills rather than her disability.  Since Murphy must prove at trial that she was dismissed solely because of her disability, her failure to produce any responsive evidence on the issue dooms her § 504 claim.

    2.  <u>Otherwise qualified</u>

    Murphy's § 504 claim also fails because she has not produced sufficient evidence in response to the Law Center's motion to convince a reasonable jury that she is otherwise qualified.  In making this determination, the court may not focus solely on whether the plaintiff can meet the program's minimum requirements in spite of her disability. <u>Alexander v. Choate</u>, 469 U.S. 287, 301 (1985).  Instead, it must determine whether the plaintiff's disability can be reasonably accommodated through changes in the program's requirements that do not alter its essential nature or unduly burden the program's sponsor. <u>School Bd. v. Arline</u>, 480 U.S. 273, 287 n.17 (1986).  If, however, the plaintiff cannot

14

succeed in spite of her disability, even with all reasonable accommodations, she is not entitled to relief under § 504. See id.

Murphy claims that she is otherwise qualified because she could meet the Law Center's minimum requirements if the school allowed her to take oral exams. She has offered no evidence, however, to support this contention. First, the undisputed evidence establishes that she failed to achieve passing grades even after she received all of the accommodations suggested by her physician. See McGregor, 3 F.3d at 856, 860 (plaintiff who received similar accommodations and still failed was not otherwise qualified). Second, the only evidence in the record suggesting that she has the analytical skills to be a successful law student is the Law Center's decision to admit her in spite of her disability. However, not every student admitted to Law Center is qualified to receive a degree. See id. at 854-55. Thus, this evidence, standing alone, is not sufficient to convince a reasonable jury that Murphy could succeed if she were allowed to take oral exams. Since Murphy has produced no other evidence to support her claim, I also grant Franklin Pierce's motion for summary judgment on this basis.

15

## C. Education Amendments Claim

Murphy contends that Franklin Pierce violated Title IX[4], because the Law Center denied her an accommodation for her disability that it had approved for an unidentified male student with a similar disability. Franklin Pierce challenges this claim by arguing that Murphy lacks any supporting evidence.

As with other statutes prohibiting discrimination on the basis of sex, the plaintiff bears the burden of proving her Title IX claims. Lipsett v. University of P.R., 864 F.2d 881, 896-97 (1st Cir. 1988) (applying disparate treatment standards under Title VII to Title IX claims). Here, Murphy has offered no evidence to support her claims that the unnamed male student received preferential treatment. Nor does she offer any evidence suggesting that the male student's disability was enough like hers to entitle her to a similar accommodation. Since Murphy has not requested additional time to respond to the Law Center's motion pursuant to Fed. R. Civ. P. 56(f), she cannot avoid

---

[4]Title IX states in pertinent part: "No person in the United States shall, on the basis of sex, be excluded from participation in, or be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance...." The parties do not dispute that Franklin Pierce qualifies as an institution which receives federal financial assistance. 20 U.S.C.A. § 1681 (West 1990).

16

summary judgment on this grossly inadequate claim simply by asking for an opportunity to prove the claim at trial. Garside v. Osco Drug, Inc., 895 F.2d 41, 49 (1st Cir. 1990); see also, Patterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 988 (1st Cir. 1988).

### D. Fourteenth Amendment Claims

Murphy claims that the Law Center violated her Fourteenth Amendment rights to equal protection and due process. Although Franklin Pierce has moved for summary judgment on these claims, Murphy's objection and supporting memorandum make no mention of her constitutional claims. By failing to address the Law Center's challenges to those claims in her responsive memorandum, Murphy has waived her right to object to the claims' dismissal. Reed Paper Co. v. Proctor & Gamble Distributing Co., 807 F. Supp. 840, 850 (D. Me. 1992); see also, Collins v. Marina-Martinez, 894 F.2d 474, 481 n.9 (1st Cir. 1990).

### E. State Law Claims

Having dismissed Murphy's federal claims, I decline to exercise my discretion to retain jurisdiction over state law claims. See 28 U.S.C.A. § 1367(c)(3) (West 1993). Accordingly, I dismiss these claims without prejudice.

17

## CONCLUSION

Franklin Pierce's motion for summary judgment (document no. 10) is granted with respect to counts I, II, and III of plaintiff's complaint, and plaintiff's cross-motion for summary judgment (document no. 13) is denied.  Plaintiff's state law claims are dismissed without prejudice.

SO ORDERED.

_____
Paul Barbadoro
United States District Judge

November 17, 1994

cc:  Russell F. Hilliard, Esq.
     Dennis Murakami, Esq.
     Gary B. Richardson, Esq.