Winnacunnet & SAU 21 v. Nat'l Union    CV-93-627-B    11/03/95
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Winnacunnet Cooperative School District

    v.                                                    Civil No. 93-627-B

National Union Fire Insurance Company

    and

School Administrative Unit #21

    v.                                                    Civil No.  93-671-B

National Union Fire Insurance Company




**O R D E R**

The parties have filed supplemental materials in response to my order of September 25, 1995, to address the question raised in the plaintiffs' motion for reconsideration concerning the source of the plaintiffs' injuries in the underlying lawsuits.  Having considered all of the materials, I deny the plaintiffs' motions for reconsideration for the following reasons.

**I.  BACKGROUND**

In my order dated August 29, 1995, I granted defendant's, National Union Fire Insurance Company ("National"), motions for summary judgment denying the plaintiffs', Winnacunnet Cooperative

School District ("Winnacunnet") and School Administrative Unit #21 ("Unit #21"), petitions for declaratory judgment seeking insurance coverage. National asserted that policy exclusions for "claims arising out of" either assault or battery or bodily injury or death barred coverage for the claims made against Winnacunnet and Unit #21. I looked beyond the pleadings in the underlying suits because the facts alleged did not clearly preclude coverage and the circumstances[1] suggested the need "to avoid permitting the pleading strategies, whims, and vagaries of third party claimants to control the rights of parties to an insurance contract." M. Mooney Corp. v. United States Fidelity & Guar. Co., 136 N.H. 463, 469 (1992). Relying on counsels' representations made during a telephone conference that the conspiracy and murder of Gregory Smart were the source of the plaintiffs' alleged injuries, I concluded that the source of the underlying claims was undisputed. I followed the majority rule, explained in my order, that a cause of action is deemed to arise out of an assault or the death of another person if that is the

[1] The two underlying suits, one brought by Cecelia Pierce against SAU #21, and the other brought by Vance Lattime, William Flynn, Patrick Randall, and their parents against Winnacunnet, allege negligence in hiring, training, and supervising Pamela Smart. Pierce, Flynn, Randall, and Lattime were students at Winnacunnet High School who became involved with Pamela Smart and the conspiracy and murder of her husband, Gregory Smart.

2

source of injury claimed in the suit, even if the insured negligently allowed the assault or death to occur. I then concluded that the claims were barred by the policy exclusions because the conspiracy and murder of Gregory Smart were the undisputed sources of the injuries claimed, and granted summary judgment in National's favor.

Winnacunnet and Unit #21 moved for reconsideration. In their motions, they disavowed the representations made during the telephone conference that the source of the underlying injuries was the conspiracy and murder of Gregory Smart. Because the telephone conference was not recorded and the parties' agreement on the issue was not in writing, I granted the parties an opportunity to submit additional materials on the issue of whether the conspiracy and murder of Gregory Smart was the source of the underlying plaintiffs' alleged injuries.

## II. **DISCUSSION**

National, as the insurer in a declaratory judgment action for disputed coverage, bears the burden of proving noncoverage. N.H. Rev. Stat. Ann. §422:22-a (Supp. 1994). To win summary judgment in its favor, National must produce enough supportive evidence to entitle it to judgment as a matter of law (i.e., no reasonable jury could find otherwise even when construing the

3

evidence in the light most favorable to Winnacunnet and Unit #21), and Winnacunnet and Unit #21 must fail to produce sufficient responsive evidence to raise a genuine dispute as to any material fact. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115-17 (11th Cir. 1993); Murphy v. Franklin Pierce Law Center, 882 F. Supp. 1176, 1180 (D.N.H. 1994). Having decided the legal questions pertinent to the interpretation and application of the relevant policy exclusions and finding no error, I decline to reconsider my previous legal analysis. Therefore, in ruling on the motions to reconsider, I must determine whether the undisputed material facts entitle National Union to summary judgment under the applicable legal standard.

## A. Cecelia Pierce's Suit

In her complaint in the underlying suit, Cecelia Pierce alleges that Unit #21's negligence caused her "loss of education, loss of past, present and future earnings, loss of reputation and standing in the community, and mental anguish." National argues that all of her alleged injuries arose from the consequences of her participation in the conspiracy to kill Gregory Smart. In support of its argument, National offers excerpts of Pierce's deposition in which she explained the injuries she claims.

She testified that her loss of education was due to her absence from school during her junior year to testify at Pamela

4

Smart's murder trial.  Pierce described later difficulties getting into college without the assistance of Winnacunnet High School.  She testified that she lost earnings because she had to leave her job in order to assist the police in the investigation of the Smart murder and then to testify at the trial.  She also testified that her involvement in the murder conspiracy, her failure to reveal the plan before Gregory Smart's death, the trial, and the resulting publicity caused her to lose friends and her reputation and standing in the community, all of which resulted in mental anguish.

In response, Unit #21 discusses Pierce's claims of negligent hiring, training, and supervision of Pamela Smart, the discovery conducted, and the probable evidence of negligence to be presented at trial in the underlying action.  Unit #21 includes copies of the complaint, the notice of claim, Pierce's pretrial statement, interrogatories from Pierce to Unit #21, Pierce's answers to Unit #21's interrogatories, and excerpts from Pierce's depositions to show that Pierce alleges negligence as her cause of action against Unit #21 and does not assert a claim based on the conspiracy and murder of Gregory Smart.

Unit #21 points to one of Pierce's answers, which is only submitted in part, to explain the basis of her claim.  Apparently referring to a previous discussion, Pierce was asked, "Is it

5

these things that went on that you're complaining about in this lawsuit?" and she responded in part:

> It's just everything, it's everything. Mainly, it's that my mother went to the school and she spoke to my principal and she told him that I was spending too much time with Pam and she wanted it ended. And he said that he had noticed and he would do something about it. And he didn't. And if he had, I can't tell you what, I'm not, you know, I can't predict the . . .

While the materials submitted, taken in the light most favorable to Unit #21, affirm that Pierce alleges negligence in hiring, training, and supervising Pamela Smart, and in allowing an improper relationship to develop between Smart and Pierce, they do not address the question of how Unit #21's alleged negligence caused Pierce's alleged injuries of loss of education, loss of earnings, loss of reputation and standing in the community, and mental anguish. There is no dispute that Pierce claims that Unit #21 was negligent. The material question here, however, is how did the alleged negligence cause Pierce's injuries.

National supports its position with the deposition testimony discussed above showing that Pierce believes her injuries were caused by the aftermath of her involvement in the murder conspiracy. Unit #21 has not produced any contradictory evidence. As a result, based on all the materials submitted, taken in the light most favorable to Unit #21, no reasonable

juror could find that Pierce is seeking to recover for injuries she suffered other than as a result of her involvement in the murder conspiracy.

B.   **Lattime, Flynn, and Randall Suit**

In their complaint in the underlying suit, Lattime, Flynn, and Randall allege the following injuries:

> emotional distress, mental instability, physical incarceration, impairment of judgment, thereby causing them to suffer criminal responsibilities, incarceration, irreparable harm through loss of liberty, lost earnings, earning capacity, loss of education by and through Defendant, financial loss, separation of Students from their parents and family, loss of consortium by the parents, loss of consortium by the Students, etc.

National points to deposition testimony by the three student plaintiffs that they would not have brought the underlying law suit if they had not been involved in the conspiracy and murder of Gregory Smart. Although National concedes that their allegations concerning Pamela Smart's relationship with the students might have caused them injury even if the conspiracy and murder had never occurred, National argues that the plaintiffs have not alleged or described injuries on those grounds. Thus, National contends, the underlying plaintiffs' injuries were caused solely as a result of their participation in the murder conspiracy.

7

## a. The Randalls' testimony.

Patrick Randall testified that he understood that the harm alleged in the complaint was that he, Flynn, and Lattime were unsupervised. He states that he was not suing because he was arrested or because he is in jail. He also testified, "If I never got caught for killing Greg Smart, I would have never brought a lawsuit" and "I still suffered the harm whether I got caught or whether I got away with it." He says, "If I stayed away from Pam Smart, . . . I would have never suffered anything." Randall's deposition testimony submitted here, construed in favor of Winnacunnet's arguments, suggests in part that Randall believed that he suffered an unspecified injury due to lack of supervision.[2] Randall also states, however, that he would not have sued but for his involvement in killing Greg Smart. Therefore, Winnacunnet has not identified any other injury Randall may have suffered in addition to those associated with his arrest and incarceration for his role in the killing.

---

[2] While lack of supervision may lead to harm, it is not an injury in and of itself, and the plaintiffs' complaint does not allege lack of supervision as an injury despite Randall's understanding of the suit.

8

Patrick Randall's mother gave the following testimony at her deposition:

Q. Why is it you are suing the high school?
A. Because what happened to my son I don't want to happen to anybody else.
Q. And, what happened to your son is his incarceration in the murder of Gregory Smart?
A. Right.
Q. Now, if Greg Smart hadn't been murdered, would you be suing the school district?
A. If he--I guess that means if he hadn't met Pam, in which case, there would be no reason.

Mrs. Randall denied that she was suing the school because of her son's involvement in the Smart murder explaining essentially that her suit was based the school's responsibility for allowing the "situation" to develop with Pam Smart that culminated in the murder.

**b. The Flynns' testimony.**

William Flynn testified that the lawsuit was brought because Winnacunnet was negligent in its supervision of him, his fellow student plaintiffs and Pam Smart, "and possibly if they had been more aware of what was going on, then this might have been averted." His mother was asked in her deposition whether the only reason for bringing the suit against Winnacunnet was because her son murdered Gregory Smart. She replied, "Because of what happened as a result of lack of supervision. . . . And, I believe if there had been some kind of policy, it may have been more

9

notice would have been taken, hence avoiding the situation that occurred."

c.  **The Lattimes' testimony.**

Vance Lattime testified that he believed the school should have intervened in his relationship and Flynn's relationship with Pam Smart.  After denying that he brought suit because he was arrested and jailed for his role in the Smart murder, he explained the reason for bringing suit:

> I think it's more along the lines of getting caught,
> [for the murder] realizing what happened, realizing the
> manipulation that was involved, then coming to jail and
> realizing that everything else could have been
> prevented if actions were taken and that is what
> brought the suit, not if I didn't get caught.  If you
> don't get caught, you don't look back . . . .

His mother testified that they brought suit because the school was negligent in hiring Pamela Smart and failing to properly supervise her, and "had they followed up or done anything to investigate a faculty/student relationship, that possibly this never would have happened or gone as far as it did."

Construing the deposition testimony generously in Winnacunnet's favor, the plaintiffs may have intended to refer to injuries other than the boys' arrest and incarceration for their participation in the Smart murder.  If so, however, Winnacunnet has failed to explain what other injuries the plaintiffs claimed. Further, Winnacunnet has not explained how the injuries alleged

10

in the complaint occurred other than as a result of the Smart murder. The deponents do not dispute that the boys were incarcerated for their roles in the Smart murder. Winnacunnet points to no evidence that any of the plaintiffs alleged or suffered injuries other than those resulting from the boys' arrest and incarceration for the Smart murder. Thus, Winnacunnet has not shown that a dispute exists as to the source of the underlying plaintiffs' injuries alleged in the complaint.

Because Unit #21 and Winnacunnet have not demonstrated that my order granting summary judgment in favor of National was in error, I deny their motions for reconsideration.

## III. CONCLUSION

For the foregoing reasons, plaintiffs' motions to reconsider, (document nos. 44 [Winnacunnet] and 26 [Unit #21]) are denied.

SO ORDERED.

_____
Paul Barbadoro
United States District Judge

November 3, 1995

cc: Gordon A. Rehnborg, Jr., Esq.
    Peter J. Saari, Esq.
    Richard G. Sheehan, Esq.
    Mark M. Rumley, Esq.

11