**Acadia v. McNeil**                     **CV-96-98-B**      **10/02/96**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


Acadia Insurance Company

        v.                                             CV-96-98-B

Michael McNeil


**O R D E R**

George McNeil filed suit in state court against his son, Michael, seeking to recover for injuries suffered during a boating accident.  Prior to the account, Michael McNeil purchased a Yacht Insurance Policy from Acadia Insurance Company ("Acadia") that contained an exclusion for liability resulting from injury to a family member ("intra-family exclusion").  Relying on this exclusion, Acadia filed a declaratory judgment action in this court against Michael McNeil, contending that it was not obligated to defend or indemnify Michael McNeil in the action filed by his father.  A day before Acadia filed its action, George McNeil filed a declaratory judgment action in state court against Acadia contending that the intra-family exclusion was invalid.  Acadia removed that action to this court and the two cases were consolidated.  The parties have now filed cross-

motions for summary judgment.  For reasons that follow, I grant Michael McNeil's motion for summary judgment, deny Acadia's motion for summary judgment, and declare that the intra-family exclusion is invalid.

## I.  BACKGROUND

The following facts are not in dispute.  On July 1, 1995, Acadia Insurance Company issued yacht policy number YPA 008483-11 to Michael McNeil to insure his new Sea Ray Jet Boat.  The policy states, in pertinent part:

> We will pay damages for all loss of life, bodily injury
> and property damage which occur during the policy
> period and for which you become legally liable to pay
> by reason of your ownership, operation, or maintenance
> of the insured property . . . We will not pay damages
> for any amount . . . for any liability between or among
> members of your family.

George McNeil, Michael's father, claims that Michael injured him on August 1, 1995 on Lake Winnipesaukee by driving the boat negligently.  George filed a civil action against his son in the Belknap County Superior Court on January 30, 1996.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate if the record taken in the light most favorable to the nonmoving party shows that no genuine

issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Commercial Union Ins. Co. v. Walbrook Ins. Co., 7 F.3d 1047, 1050 (1st Cir. 1993).  Where the nonmoving party bears the burden of proof, the moving party initially need allege only the lack of evidence to support the nonmoving party's case.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  The nonmoving party cannot rely on the pleadings alone to oppose summary judgment, but must come forward with properly supported facts to demonstrate that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

If the moving party will bear the burden of proof on an issue at trial, the court will grant summary judgment only if: "(1) the moving party initially produces enough supportive evidence to entitle the movant to judgment as a matter of law (i.e., no reasonable jury could find otherwise even when construing the evidence in the light most favorable to the non-movant), and (2) the non-movant fails to produce sufficient responsive evidence to raise a genuine dispute as to any material fact."  Murphy v. Franklin Pierce Law Center, 882 F. Supp. 1176, 1180 (D.N.H. 1994) (citing Fitzpatrick v. Atlanta, 2 F.3d 1112,

1115-17 (11th Cir. 1993)), aff'd, 56 F.3d 59 (1st Cir. 1995) (table). A "material fact" is one "that might affect the outcome of the suit under the governing law," and a genuine factual issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When the facts are undisputed, the moving party can prevail only if it is entitled to judgment as a matter of law on the undisputed material facts. Desmond v. Varrasso (In re Varrasso), 37 F.3d 760, 764 (1st Cir. 1994).

## III. DISCUSSION

The only issue presented by this case is whether the intra-family exclusion is subject to N.H. Rev. Stat. Ann. § 412:2-a (II) (Supp. 1995), which provides:

> II. No liability policy issued or delivered in this state shall contain any exclusion which would preclude coverage for intra-family or iNter-spousal claims.

If the statute applies, the policy's exclusion for liability claims among family members is unenforceable and Acadia owes McNeil both a duty to defend and a duty to indemnify. If the statute does not apply, the exclusion bars McNeil's claims.

4

Acadia argues that because the policy is a "marine insurance policy," it is exempt from all state regulations, including § 412:2-a (II). I disagree. Where the interpretation or application of a marine insurance policy is subject to a federal statute or an existing federal common law rule, any contrary state law rule must give way. See Kossick v. United First, 365 U.S. 731, 741 (1961) (federal maritime law precludes the application of state statute of frauds); Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 411 (1953) (maritime law of comparative negligence applied rather than state law of contributory negligence); but see American Dredging Co. v. Miller, 510 U.S. 443-453-54 (1994) (maritime law does not preempt use of state forum non conveniens principles in maritime actions filed in state court). However, where a state law principle would resolve the issue and a federal statute does not dictate a contrary result, state law will control "unless the federal courts have fashioned an admiralty rule on point, or unless the [court determines that the] need for such a rule exists." Yowell v. Exxon Corp., 48 F.3d 105, 110 (2d Cir. 1995), vacated on other grounds, 116 S. Ct. 43 (1995); see also Wilburn Boat Co. v. Fireman's Fund Ins. Co., 348 U.S. 310, 314 (1955) (state law

5

determines the effect of a breach of warranty provision in a marine insurance policy).

In this case, Acadia has not identified a controlling federal statute or common law rule that is inconsistent with § 412:2-a (II).  Nor has it offered any argument as to why it is necessary to develop a uniform federal common law rule to address this issue.  Therefore, I will not determine on my own whether state regulation must give way in this area.  See American Dredging Co., 510 U.S. at 451-54 n.3 (noting the difficult problem of distinguishing between permissible and impermissible state regulation in area of admiralty law).  Instead, I assume that the issue is properly a subject of state regulation and move on to consider Acadia's claim that § 412:2-a (II) does not apply to marine insurance policies.

Acadia argues that the reference in § 412:2-a (II) to "liability policy" does not include marine insurance liability policies.  To support this argument, Acadia points to N.H. Rev. Stat. Ann. § 401:1 (1983), which describes the kinds of insurance which a corporation may be formed to sell in New Hampshire. Under § 401:1(II), a corporation may be formed to sell insurance:

> On vessels, aircraft, cars or other vehicles, freight, goods, money, effects, and money loaned on bottomry and respondentia, against loss or damage from the perils of the sea and other perils usually insured against by

6

marine insurance, or from the risk of inland navigation
and transportation; and all personal property floater
risks; and on motor vehicles and aircraft, excluding
the liability of the insured for the death, injury, or
disability of another person arising out of the
ownership, maintenance, or use of motor vehicles, and
aircraft, their fittings and contents and use and
occupancy, against loss or damage from accident,
collision, theft, or other casualty, and against
liability of the owner or user thereof for injury or
damage to property caused thereby.

(Emphasis added).

Under § 401:1(IV), a corporation may also be organized to

sell insurance:

Against the liability of the insured for the death or
disability or damage to property of another and on
motor vehicles and aircraft, their fittings and
contents and use and occupancy, against loss or damage
from accident, collision, fire, theft or other
casualty.

(Emphasis added.)

Acadia is apparently correct to say that marine insurance

and liability insurance are treated as distinct types of

insurance in § 401:1. This truth, however, is irrelevant.

Acadia does not deny that it agreed to insure Michael for

liability for death or bodily injury for which he became liable

due to his ownership, operation, or maintenance of the boat. Nor

does it point to any statutes or cases to rebut the common sense

conclusion that because the policy provides liability insurance,

it qualifies as a "liability policy." Therefore, I conclude that

7

the plain language of § 412:2-a (II) covers maritime liability policies such as the one sold by Acadia. Accordingly, the policy's intra-family exclusion is invalid.[1]

## IV. CONCLUSION

For the foregoing reasons Michael McNeil's motion for summary judgment (document no. 10) is granted, Acadia's motion for summary judgment (document no. 9) is denied, and I declare that the exclusion of insurance for liability for death or injury caused to a family member in the insurance policy Acadia issued to Michael McNeil is invalid.

SO ORDERED.

_____
Paul Barbadoro
United States District Judge

October 2, 1996

cc:  J. Kirk Trombley, Esq.
     Christine M. Rockefeller, Esq.
     Emmanuel Krasner, Esq.

_____

[1] Because § 412:2-a(II) is unambiguous, I need not delve into its legislative history. See Chroniak v. Golden Inv. Corp., 133 N.H. 346, 350-51 (1990).

8