Richard DUHAIME, et al.,
Plaintiffs, Appellees,

v.

JOHN HANCOCK MUTUAL LIFE
INSURANCE COMPANY, et al.,
Defendants, Appellees,

Howard M. Metzenbaum, Appellant.

No. 98–2139.

United States Court of Appeals,
First Circuit.

Heard April 5, 1999.

Decided June 28, 1999.

Brian Wolfman, with whom Alan B. Morrison and Public Citizen Litigation Group, were on brief for appellant.

John G. Fabiano, with whom Peter A. Spaeth, Hale and Dorr LLP, Ralph C. Ferrara, Edwin G. Schallert, and Debevoise & Plimpton, were on brief for appellees.

Before SELYA, BOUDIN, and STAHL, Circuit Judges.

STAHL, Circuit Judge.

This appeal is an offshoot of a massive securities fraud, fraud, and breach of fiduciary duties class-action lawsuit brought against John Hancock Mutual Life Insurance Company, John Hancock Variable Life Insurance Company, and John Hancock Distributors, Inc. (collectively "John Hancock"). The underlying suit, filed in September 1995 on behalf of nearly four million present and former policyholders, challenged a number of John Hancock's sales and marketing practices from 1979 through the mid–1990s. On June 6, 1997, the putative class entered into a Stipulation of Settlement with John Hancock. Eventually, the district court certified the class and approved the settlement, explaining its reasoning in a comprehensive opinion. *See Duhaime v. John Hancock Mutual Life Ins. Co.*, 177 F.R.D. 54 (D.Mass. 1997) ("*Duhaime I*"). Because the partic-

ulars of the lawsuit and the settlement terms are largely irrelevant to our analysis, we refer interested readers to *Duhaime I* and confine our focus to facts pertinent to this appeal.

After the details of the proposed settlement were communicated to the class in late June 1997, seventy-seven absent class members (i.e., class members not named as parties) came forward and filed written objections. Among the objectors were appellant Howard M. Metzenbaum and sixteen policyholders represented by attorney Diane Nygaard. We follow the lead of the parties and refer to the Nygaard-led group as the "Rose Objectors." Metzenbaum initially took issue with various aspects of the class notice and with the structure of the proposed counsel-fees award, but after negotiating changes to the notice procedures that satisfied his concerns in this area, he chose to press only his counsel-fees objection. The Rose Objectors filed sweeping objections to nearly all aspects of the proposed settlement. On October 24, 1997, the district court held a hearing to evaluate the fairness of the settlement. *See* Fed.R.Civ.P. 23(e). Metzenbaum and the Rose Objectors appeared to present their arguments in opposition. On December 31, 1997, the court filed separate memoranda and orders approving the settlement, *see Duhaime I*, 177 F.R.D. at 72, but altering to some degree the fee-payment structure conceived by the settling parties, *see Duhaime v. John Hancock Mutual Life Ins. Co.*, 989 F.Supp. 375, 378–80 (D.Mass.1997) ("*Duhaime II*"). In doing so, the court largely sustained Metzenbaum's objections, *see id.*, but rejected the Rose Objectors' complaints as lacking in merit, *see Duhaime I*, 177 F.R.D. at 71–72.

Shortly after the district court approved the settlement, Attorney Nygaard, acting on behalf of the Rose Objectors, filed a request for counsel fees in the district court and a notice of appeal from the court's approval of the settlement. When Metzenbaum's counsel learned of the appeal, he telephoned Nygaard and asked that she serve him with copies of the appellate briefs. Nygaard agreed to put Metzenbaum's counsel on the service list, but added that the appeal soon would be settled on "very, very good" terms for her clients. Shortly thereafter, the Rose Objectors withdrew with prejudice both their appeal and their still-pending request for counsel fees.

At this point, Metzenbaum became concerned that something was amiss because the Rose Objectors apparently had secured a side settlement more favorable than the class settlement and no court had evaluated the fairness of the side settlement. In Metzenbaum's view (elaborated below), a post-judgment settlement of this nature violates both the letter and spirit of Fed.R.Civ.P. 23(e): "A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs." *See also In re General Motors Corp. Pick–Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 804–19 (3d Cir.1995) (Rule 23(e) scrutiny entails a detailed inquiry into whether the proposed class action settlement is fair, reasonable, and adequate). Metzenbaum's counsel wrote to Nygaard, class counsel, and John Hancock's counsel, advising them that the side settlement should be presented to the district court and asking for disclosure of its terms. Counsel for the so-called "settling parties" responded that disclosure and approval were not required under the circumstances. The responses indicated that, in addition to resolving the claims of the Rose Objectors, the side settlement also resolved claims of other clients of Attorney Nygaard who had opted out of the class. The responses did not, however, disclose the terms of the side settlement or even the parties to the side settlement. Metzenbaum suggests that class counsel, as well as John Hancock, may have been involved in negotiating the

side settlement, and we accept the suggestion for purposes of this appeal.

Metzenbaum then served discovery on John Hancock, Nygaard, and class counsel, but received replies stating that the discovery requests were untimely and that, as an absent class member, he was not a "party" entitled to discovery. Consequently, Metzenbaum moved the district court to compel post-judgment discovery under Fed.R.Civ.P. 37 and, in the event the court did not regard him as a party entitled to discovery, to permit him to intervene as a party under Fed.R.Civ.P. 24. In making his motion, Metzenbaum informed the court that, should the requested discovery reveal a substantial difference between the side settlement with the Rose Objectors and the settlement offered to the class, he would file a motion under Fed.R.Civ.P. 60(b) asking the court either to require John Hancock to offer the same deal to all class members, including himself, or to abrogate the Rose Objectors' side settlement and require that the proceeds be disbursed to the class. John Hancock opposed the motion, pointing out, *inter alia,* that the class settlement was entirely unaffected by the side settlement with the Rose Objectors. The court denied Metzenbaum's motion by margin order. This appeal, which only John Hancock actively opposes, followed.

In framing their appellate arguments, the parties have sounded broad themes and taken a number of controversial positions. Metzenbaum asserts that Fed.R.Civ.P. 23(e) applies even to settlements concluded on appeal; that in the circumstances presented here, he was entitled to invoke Fed.R.Civ.P. 37's enforcement provisions post-judgment; that absent class members such as himself are "parties" to class actions entitled to discovery; and alternatively, that he was entitled to intervene as a party in the district court either as of right, *see* Fed.R.Civ.P. 24(a), or by court permission, *see* Fed.R.Civ.P. 24(b). John Hancock counters that Metzenbaum lacked Article III standing in the district court because he failed to allege an injury in fact, i.e., that he has suffered, or imminently will suffer, an invasion of a concrete, particularized, and legally protected interest, *see Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); that absent class members are not parties to class actions; that Metzenbaum's allegations fail to establish an entitlement to intervention, either as of right or by court permission; and that the district court in any event properly declined Metzenbaum's request for discovery because the material sought could provide no basis for upsetting the judgment.

■ As to whether Metzenbaum had Article III standing, we think it sufficient to observe that the line of argument set forth in the motion to compel (and on appeal) necessitates a discussion of the possibility of a fraud, *see infra* at 3, and that Metzenbaum, as a class member, has standing to press such an argument because he has a concrete, particularized, and legally protected interest in both faithful representation by class counsel and in not being defrauded by an adverse party, *cf.* Fed.R.Civ.P. 60(b)(3) (recognizing "fraud … misrepresentation, or other misconduct of an adverse party" as a basis for seeking relief from judgment). As to the potentially difficult issues of Metzenbaum's "party" status and right to intervention in order to obtain discovery, we think they are extinguished for purposes of this case by our answer to a narrower, logically antecedent question: Must a district court scrutinize and approve as fair an appellate side settlement between the parties who have reached a court-approved settlement of a class action and separately represented class members who had objected to the settlement prior to its approval? Metzenbaum contends that Fed.R.Civ.P. 23(e) and/or general class action principles derived from the case law give class members like himself an interest in such scrutiny and approval. But as we explain below, Metzenbaum reads the au-

thority he cites too broadly. Where, as here, the class settlement is unaffected by the side settlement and there has been no demonstration of a fraud, absent class members like Metzenbaum simply have no unconditional right to have a court review and approve as fair the terms of such a side settlement.

We start with Metzenbaum's contention that Fed.R.Civ.P. 23(e) explicitly requires court approval of the side settlement. Assuming *arguendo* that the Rule somehow applies post-judgment to the compromise of an appeal from a district court's approval of a class-action settlement, *but see* Fed. R.Civ.P. 1 ("These rules govern the procedure in the United States *district courts* . . . .") (emphasis supplied), we reject the argument on plain language grounds. Rule 23(e) only requires court approval of the dismissal or compromise of "[the] class action" itself; it in no way suggests that negotiated resolutions of disputes peripheral to the class action need be approved. It is for precisely this reason that courts have declined to require full Rule 23(e) approval of separate merits settlements that class-action defendants have negotiated with absent class members. *See, e.g., In re General Motors Corp. Engine Interchange Litig.,* 594 F.2d 1106, 1138–40 (7th Cir.1979) (judicial examination of such separate merits settlements is not to ensure the fairness of the settlements, but only to ensure that the settlement offers provided the absent class members with sufficient information to make an informed decision whether to settle or proceed); *In re Shell Oil Refinery,* 152 F.R.D. 526, 536 (E.D.La. 1989) (same); *see generally* 2 Herbert Newberg & Alba Conte, *Newberg on Class Actions* § 11.75, at 11–199 (3d ed.1992); 7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1797, at 377–78 (2d ed.1986); *cf. Weight Watchers of Philadelphia v. Weight Watchers Int'l Inc.,* 455 F.2d 770, 773 (2d Cir.1972) (Friendly, J.) (declining to require full Rule 23(e) approval of settlements with potential class members prior to class certification).

Such individual side settlements are just that—side settlements; they are not a settlement of the class action itself.

Metzenbaum also argues that general class action principles support his proposed disclosure and approval requirement. In support of his position, Metzenbaum cites a number of complex litigation cases in which, even though Fed.R.Civ.P. 23(e) did not strictly apply, courts either have required court scrutiny of or actually scrutinized agreements peripheral to the class action. Unlike the just-mentioned *In re General Motors Corp.* and *In re Shell Oil Refinery* cases (where, despite the inapplicability of Rule 23(e), courts scrutinized side settlements with absent class members to ensure that those class members made informed settlement decisions), the cases Metzenbaum cites all involved circumstances in which there were systemic incentives for class counsel or the named class plaintiffs to act in disregard of fiduciary duties owed to absent class members in concluding these peripheral agreements.

For example, noting "the danger that the lawyers might urge a class settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment on fees," *Weinberger v. Great Northern Nekoosa Corp.,* 925 F.2d 518, 524 (1st Cir. 1991), we have directed district courts to exercise their equitable jurisdiction to review counsel-fee arrangements negotiated in connection with class-action settlements—even where the counsel fees are not taken from a common fund but are instead paid separately by a class-action defendant, *see id.* at 523–25. Similarly, courts in two recent mass-tort settlements appear to have required approval of settlements struck between clients of class counsel who were not members of a class and a party opposing the class. *See Georgine v. Amchem Prods., Inc.,* 157 F.R.D. 246, 294–99, 307–10 (E.D.Pa.1994), *rev'd on other grounds,* 83 F.3d 610, 622 (3d Cir.1996), *aff'd* 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); *In re Asbestos Litig.,*

90 F.3d 963, 978–80 (5th Cir.1996), *cert. granted and judgment vacated on other grounds*, 521 U.S. 1114, 117 S.Ct. 2503, 138 L.Ed.2d 1008 (1997). In each instance, the court acted out of concern that class counsel's simultaneous representation of the class and individual clients outside the class might have given rise to a conflict of interest. *See Georgine*, 157 F.R.D. at 299; *In re Asbestos*, 90 F.3d at 980. And the Fourth Circuit, having reached the controversial conclusion that Rule 23(e) does not apply prior to class certification, *see Shelton v. Pargo, Inc.*, 582 F.2d 1298, 1302–04 (4th Cir.1978), nonetheless held that precertification voluntary dismissals of claims by the named plaintiffs of a putative class should be evaluated under the Rule 23(e) paradigm pursuant to the district court's "supervisory power over and ... special responsibility in actions brought as class actions," *id.* at 1306. In *Shelton*, the concern was that a named plaintiff may succumb to self-interest and settle in such a way as to harm the interests of absent class members. *See id.* at 1304–06 & nn. 17–19.

But we see no inherent risk of victimization of the uninformed, convergence of interests of putative adversaries, or conflict of interests between or among those to whom fiduciary duties are owed, in an appellate side settlement of the type Metzenbaum challenges. Tellingly, Metzenbaum does not explain how a party to or attorney involved in such an appellate side settlement might be tempted to act in derogation of a fiduciary duty. This of course means that Metzenbaum has not specified how class counsel—the only persons potentially involved in the side settlement with fiduciary duties to absent class members like himself—faced systemically generated incentives to violate such a duty in compromising the Rose Objectors' appeal. Instead, Metzenbaum derives from the cases just described a broader principle: a generalized concern on the part of courts that "similarly-situated class members [be] treated similarly and that monies paid by the defendants for purposes of settlement inure to the benefit of all class members." Appellant's Brief at 16; *see also id.* at 17, 19, and 23. Using this principle as his point of departure, Metzenbaum argues that the injury he suffered is his alleged unequal treatment (in terms of settlement results) vis-a-vis the Rose Objectors.

Metzenbaum's statement of the applicable principle is sound insofar as it implies that courts are concerned with adequate and similar results for all similarly situated class members *in a class action settlement*. *See, e.g., In re General Motors Corp.*, 55 F.3d at 808 ("One sign that a settlement may not be fair is that some segments of the class are treated differently from others."). Yet this is only because different recoveries for similarly harmed persons who have remained within the class and are represented by class counsel (or high attorney-fee awards negotiated in connection with paltry class settlements) can constitute powerful evidence *that a fiduciary obligation has not been honored*. *See In re General Motors Corp.*, 594 F.2d at 1139 ("Rule 23(e) requires judicial approval of class action settlements to guard against possible ineffective representation of absentees' interests by the representative parties."); *see also, e.g., In re General Motors Corp.*, 55 F.3d at 809 (courts should "withhold approval from any settlement that creates conflicts among the class"); *Weinberger*, 925 F.2d at 524–25 (discussing oversight of attorney-fee agreements as necessary to prevent class-harming conflicts of interest between the plaintiff class and class counsel); 7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1797, at 340–41 (discussing oversight of settlements involving representative parties as necessary to ensure that the representative parties had not become fainthearted or settled solely out of self-interest). But to the extent that Metzenbaum reads cases like *Weinberger, Georgine, In re Asbestos,* and *Shelton* as broadly directing courts entertaining class

actions to ensure similar recoveries by all similarly harmed persons within the original class, regardless of the litigation decisions they have made, he is wrong.

We simply have no tradition of court intervention to ensure that similarly victimized plaintiffs who have retained separate counsel and have made different litigation decisions get similar results. *Cf., e.g.,* Fed.R.Civ.P. 23(c)(2) (requiring that notice to the class explicitly inform class members that they may opt out of the class action). Similarly harmed plaintiffs often secure separate representation and subsequently enter into materially different settlements with a common defendant. In such situations, the settling parties have no legally protected interest in having a court scrutinize each settlement to ensure that all plaintiffs receive similar consideration for their releases. A fundamental assumption of our adversary system is that adversaries represented by persons with presumably undivided loyalties will tend to negotiate acceptably fair resolutions of their disputes. As we have implied, courts oversee class-action settlements only because factors unique to the class-action context—the already-noted tendency towards a coincidence of interests between class representatives and the party opposing the class, and the chasm between representatives and faceless, absent class members—call into question whether the representatives' loyalties are in fact undivided.

We come then to the basic question: Are Metzenbaum and the Rose Objectors so "similarly situated" that we should view any difference in their ultimate recoveries as evidence of a systemically induced breach of a fiduciary duty owed to Metzenbaum and absent class members? We think the answer clearly is "no." Although Metzenbaum and the Rose Objectors are members of the same class and originally were represented by the same class counsel, they eventually secured separate representation through which they took decidedly different positions with respect to the proposed settlement and opposite positions with respect to the final judgment. So long as there was no fraud, that the Rose Objectors might have obtained something in return for eventually dropping their efforts to disrupt the settlement constitutes no cognizable injury to Metzenbaum, who has received or will receive the full benefit of the bargain to which he acquiesced and which the district court deemed fair under Fed.R.Civ.P. 23(e).

In his appellate brief, Metzenbaum hints at but does not fully develop two additional rationales for court intervention which might be taken as alternatives to his similar-results-for-the-similarly-harmed argument. The first is that courts should intervene to prevent possible extortion; the second is that courts should intervene to prevent possible fraud. Before we conclude, we believe it important to say a few words about each of these two arguments.

The Rose Objectors had little to lose in pressing their appeal. If they had lost, they would have remained entitled to the relief secured by the class. If they had won, they almost certainly would have brought about a more favorable settlement for the class. *See* 2 *Newberg on Class Actions* § 11.14, at 11–18 ("In general, after a class is certified, particularly in a class action for damages, there is a great likelihood of settlement before trial because of the increased assessment by defense counsel of exposure to substantial liability."). In the class-action context, such little-to-lose situations sometimes cause concern because they raise the specter of extortive legal proceedings pressed "not to redress real wrongs, but to realize upon their nuisance value." *Cohen v. Beneficial Loan Corp.,* 337 U.S. 541, 548, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949) (acknowledging the incentives management sometimes has to settle "strike suits" brought as shareholder derivative actions). While we have no reason to believe that the Rose Objectors or Attorney Nygaard extorted their appellate settlement, we recognize that a class member and his or her attor-

ney conceivably could object to a proposed settlement solely to set up an appeal designed to obtain a nuisance value recovery and/or advantageous fee arrangement. We also recognize that, in *Weinberger,* a concern with deterring extortionate settlements partially informed our decision to subject to district court scrutiny all fee arrangements negotiated in connection with class-action settlements. *See* 925 F.2d at 524–25. Metzenbaum mentions the possibility of extortion in connection with the side settlement of the Rose Objectors' appeal. But in doing so, he neither argues that extortion might have caused class counsel to bargain away some portion of the class's negotiated recovery nor seeks to assert a third-party interest—e.g., the interest John Hancock (the party most obviously positioned to press an extortion argument under the circumstances) might have in not being subjected to an extortionate appeal—on grounds that John Hancock is unlikely to seek court review of the side settlement. Instead, Metzenbaum merely suggests that extortion of this type will cause a party opposing a class action to hold back funds that otherwise might have been offered to the class in the class settlement. Disclosure and approval is needed, he suggests, to ensure that the class has access to these funds in settlement negotiations.

We think that this line of argument is answered by what we already have stated. Courts examine the fairness of certain class-related settlements because it is thought that, fiduciary obligations notwithstanding, circumstances unique to the complex litigation context sometimes tempt class counsel and/or named class plaintiffs to conclude settlements that are not in the best interests of absent class members. In these situations, courts assess whether the settlements are fair, reasonable, and adequate, *see, e.g., In re General Motors Corp.,* 55 F.3d at 804–19, because fair settlements can more confidently be regarded as having been negotiated in compliance with the class representatives' fiduciary duties. But so long as the class settlement remains unaffected, nothing about the settlement of an extortionate appeal by separately represented, objecting, absent class members logically calls into question whether *the class* has been faithfully served by its representatives. Such a settlement thus would not give a class member the right to invoke Fed.R.Civ.P. 23(e) and its related doctrines as a means of creating a bigger settlement pie post-judgment, at least under the rationale alluded to here. Of course, matters could be different if there were some indication that the side settlement of an appeal was a vehicle for implementing or furthering a fraud. Unlike an appellate side settlement which at the very most merely hints that the class might have been able to obtain more in the class settlement, a fraud-masking appellate settlement should be understood to involve affirmative deceit upon the class or court—e.g., use of the recipient of the appellate settlement as a payment conduit between the party opposing the class and class counsel in an end run around a lower court's counsel-fees ruling. Seizing on the many cases which mention the prevention of "collusion" between class counsel or class representatives and the party opposing the class as a justification for court scrutiny of class-action settlements and peripheral agreements negotiated in connection with class-action settlements, *see, e.g., In re General Motors Corp.,* 55 F.3d at 805; *Weinberger,* 925 F.2d at 524–25; *Georgine,* 157 F.R.D. at 311, Metzenbaum appears to suggest that appellate side settlements of the sort we consider should be subject to scrutiny and approval as a means of detecting whether they are masking a fraud.

But after final judgment has entered, our strong interest in the finality of judgments leads courts to intervene in a search for evidence of fraud only if there has been some showing that a fraud actually has occurred. *See H.K. Porter Co. v. Goodyear Tire & Rubber Co.,* 536 F.2d 1115, 1118–22 (6th Cir.1976) (discovery in aid of a motion attacking a final judgment on the

8

basis of fraud should be permitted only if there is some evidence of fraud); *see also Midwest Franchise Corp. v. Metromedia Restaurant Group, Inc.*, 177 F.R.D. 438, 440 (N.D.Iowa 1997) (prima facie showing of fraud required); *United States ex rel. Free v. Peters*, 826 F.Supp. 1153, 1154 (N.D.Ill.1993) (same). Plainly, there has been no such showing here. In making this point, we emphasize that a court's obligation to scrutinize class-action settlements and some agreements peripheral to class-action settlements for evidence of collusion, *see, e.g., In re General Motors Corp.*, 55 F.3d at 805; *Weinberger*, 925 F.2d at 524–25, does not in some way trump the systemic interest in finality of judgments—an interest that might be thought particularly strong in the class-action context, *see Valerio v. Boise Cascade Corp.*, 80 F.R.D. 626, 647 (N.D.Cal. 1978) (finality considerations are "even more pressing in the class action context" because of the number of people the final judgment affects). Thus, it does not open the door to post-judgment discovery where there is nothing more than speculation that a fraud might have occurred.

*Affirmed.* Costs to appellees.