**In re TOBACCO/GOVERNMENTAL HEALTH CARE COSTS LITIGATION.**

**United States of America, Plaintiff,**

v.

**Philip Morris, Inc., et al., Defendants.**

MDL Docket No. 1279.
Misc. No. 99–213(PLF).
CIV. A. No. 99–2496(GK).

United States District Court,
District of Columbia.

Nov. 17, 1999.

George Mattews Fleming, Jr., Houston, TX, Charles S. Siegal, Law Offices of Charles S. Siegal, Dallas, TX, Joel S. Perwin, Miami, FL, Patrick Allen Malone, Stein, Mitchell & Mezines, Washington, DC, for Plaintiffs.

Timothy M. Broas, Winston & Strawn, Washington, DC, Herbert M. Wachtell, David Gruenstein, Ben M. Germana, Maria L. Sachs, Stephen R. DiPrima, John F. Lynch, Watchtell, Lipton, Rosen & Katz, New York City, Patrick S. Davies, Covington & Burling, Washington, DC, Bruce G. Merritt, DeBevoise & Plimpton, Joseph M. McLaughlin, Simpson, Thacher & Bartlett, New York City, Robert John Cynkar, Cooper, Carvin & Rosenthal, Washington, DC, Kenneth N. Bass, David M. Bernick, Kirkland & Ellis, Washington, DC, Peter A. Woolson, Robinson, Woolson, O'Connell, LLP, Baltimore, MD, Steven Klugman, DeBevoise & Plimpton, Washington, DC, Thomas McCormack, Chadbourne & Parke, New York City, Robert Francis McDermott, Jr., Jones, Day, Reavis & Pogue, Washington, DC, Christine L. McDaniel, Shook, Hardy & Bacon, Gene E.

Voights, Jeffrey S. Nelson, Shook, Hardy & Bacon LLP, Kansas City, MO, Peter Kryn Dykema, M. Carter Delorme, Jared R. Silverman, Winston & Strawn, Washington, DC, Thomas J. Frederick, Winston & Strawn, Chicago, IL, for Defendants.

J. Patrick Glynn, Department of Justice, Civil Division/Torts Branch, Washington, DC, for U.S.

## OPINION

FRIEDMAN, District Judge.

This matter is before the Court on the motion of defendants Philip Morris Incorporated and Philip Morris Companies Inc. (collectively "Philip Morris") to consolidate Civil Action No. 99–2496 with the lawsuits previously transferred to the undersigned by the Judicial Panel on Multidistrict Litigation ("MDL Panel"). All of the cases transferred to the undersigned by the MDL Panel were lawsuits brought by foreign governments against the tobacco industry alleging that they had been injured as a result of the tobacco industry's continued misrepresentations and anticompetitive behavior regarding the health impacts of tobacco. The United States government now has brought a similar lawsuit alleging injuries as a result of largely the same conduct on the part of the tobacco industry. Philip Morris requests that the lawsuit brought by the United States be consolidated with the foreign government suits. Because the Court concludes that the requested consolidation will not promote the just and efficient conduct of the lawsuit brought by the United States, it denies defendants' motion.

## I. BACKGROUND

The Republic of Guatemala filed suit in this Court on May 12, 1998 against nine individual tobacco companies and the to-

bacco industry's public relations and research organizations. The case was randomly assigned to the undersigned. Guatemala claimed that it was injured because it did not adequately regulate tobacco products as a result of the tobacco industry's decades-long misrepresentations and because the tobacco industry had suppressed less addictive cigarettes from the market. Specifically, Guatemala asserted claims under section 1962 of RICO, the Sherman Antitrust Act, and the District of Columbia Code, as well as under four different common law tort theories.

Around the same time, a number of other foreign governments filed nearly dentical lawsuits in the United States, some in federal district court and some in state court. After the state actions were removed to federal court, Philip Morris petitioned the MDL Panel to transfer and consolidate the "foreign government actions" for pretrial proceedings. The MDL Panel granted the motion on June 10, 1999, consolidating actions brought by Nicaragua, Venezuela and Thailand with the pending Guatemala action. *See* June 10, 1999 Order of the Judicial Panel on Multidistrict Litigation, Philip Morris' Motion to Consolidate, Exh. A ("MDL Order").[1] Even before the MDL Panel had issued its Order, an action brought by the Republic of Bolivia was transferred to this Court from the Southern District of Texas pursuant to 28 U.S.C. § 1404. *See Republic of Bolivia v. Philip Morris,* 39 F.Supp.2d 1008 (S.D.Tex.1999). While the legal claims in the four lawsuits now pending before this Court vary slightly, all four are based on the same alleged misconduct by the tobacco industry.[2]

Before any of the lawsuits was filed by a foreign government, a number of union

---

1. The Kingdom of Thailand later voluntarily dismissed its lawsuit.

2. There are slight differences between the complaints filed by the foreign governments. For example, Bolivia and Venezuela assert

only common law claims. Guatemala and Nicaragua assert antitrust and RICO claims, as well as common law claims, but Nicaragua does not assert a claim under the District of Columbia Code.

trust funds also filed claims against the tobacco industry in this Court based on the same misconduct as that alleged by the foreign governments. These cases were assigned to Judge Gladys Kessler. These cases also proceeded under Section 1962 of RICO, the Sherman Antitrust Act, and the District of Columbia Code, as well as a number of common law theories. In both the Guatemala case and the union trust fund cases, the parties have briefed and argued motions to dismiss and the Court has taken them under advisement.[3]

On September 22, 1999, the United States entered the fray by filing a lawsuit in this Court alleging that it was injured as a result of largely the same misconduct as had been alleged in the complaints filed by the foreign governments and by the union trust funds.[4] Because the United States believed that its case involved common issues of fact and grew out of the same events or transactions as the union trust fund cases, it designated its case as related to the oldest case pending in this Court presenting common factual issues, as required by this Court's Local Civil Rule 40.5(a)(3), (b)(2) and (c)(1). That case is *Service Employees Int'l Union Local 74 Welfare Fund v. Philip Morris*, Civil Action No. 98–0704, a union trust fund case assigned to Judge Kessler. Philip Morris has not contested this related case designation.

Philip Morris claims that despite the assignment of the lawsuit filed by the United States to Judge Kessler under Local Civil Rule 40.5(a), the case should be consolidated with the foreign governments' lawsuits before the undersigned pursuant to Local Civil Rule 40.5(d) because it is a "tag-along" case. While the consolidation of a "tag-along" action is an issue normally decided by the MDL Panel, the rules of the MDL Panel dictate that the consolidation of an action filed within the transferee district should be made by the transferee district itself in accordance with the transferee district's local rules. *See* Rule 7.5(a), Rules of the Judicial Panel on Multidistrict Litigation. Under the Rules of this Court, "[m]otions to consolidate cases assigned to different judges of this court shall be heard and determined by the judge to whom the earlier-numbered case is assigned." LCvR 40.5(d). As Philip Morris seeks to consolidate the United States' recently-filed action with the earlier-numbered foreign government cases, it falls to the undersigned to decide the motion to consolidate.

## II. DISCUSSION

Once the MDL Panel transfers and consolidates lawsuits before one judge for pretrial purposes, it also may transfer any "tag-along" cases to the same judge if the "tag-along" cases have been filed in other districts. A "tag-along" case is defined as "a civil action pending in a district court" that involves "common questions of fact with actions previously transferred under Section 1407." *See* Rule 1.1, Rules of the Judicial Panel on Multidistrict Litigation. In moving to transfer a "tag-along" action, the moving party has the burden of "demonstrating that transfer will further the purposes" of Section 1407. *In re G. D. Searle & Co. "Copper 7" IUD Products Liability Litigation*, 483 F.Supp. 1343, 1345 (Jud.Pan.Mult.Lit.1980). Specifically, the moving party must demonstrate that the potential "tag-along" action "raises questions of fact common to the actions previously transferred ... and that

---

**3.** The undersigned has stayed discovery in the foreign government actions until it decides the motion to dismiss in the Guatemala case.

**4.** The United States' action, however, is brought under three provisions of the United States Code that arguably allow the United States—and the United States alone—to bring suit to remedy the types of injuries alleged.

*See* Medical Care Recovery Act, 42 U.S.C. § 2651 *et seq.;* Title 18 of the Social Security Act, 42 U.S.C. § 1395y(b)(2)(B)(ii) & (iii) (Medicare Secondary Payer provisions); 18 U.S.C. § 1964(b) (allowing only the Attorney General to file a lawsuit for injunctive relief to prevent or restrain violations of RICO).

its transfer to [the transferee] district will best serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation." *In re Stirling Homex Corp. Sec. Litigation,* 442 F.Supp. 547, 549 (Jud.Pan.Mult.Lit.1977); *see also* 15 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3863 at 513 (1986).

When a potential "tag-along" case is filed in the transferee district but before a different judge, however, the Rules of the MDL Panel simply state that a request for reassignment should be made "in accordance with the local rules for the assignment of related cases." *See* Rule 7.5(a), Rules of the Judicial Panel on Multidistrict Litigation. There is no instruction as to whether to apply the analysis normally used by the MDL Panel for "tag-along" actions or whether to apply some other standard for consolidation. Philip Morris has requested the consolidation of the action filed by the United States with the foreign government lawsuits in order to further the purposes of the MDL Panel's Order. The Court therefore will apply the criteria for analyzing requests to transfer and consolidate "tag-along" cases that previously have been used by the MDL Panel itself: (1) whether the action raises common questions of fact; (2) whether consolidation would best serve the convenience of the parties and witnesses; and (3) whether consolidation would promote the just and efficient conduct of the litigation. *See In re Stirling Homex Corp. Securities Litigation,* 442 F.Supp. at 549.

■ No party to these various actions denies that the first criterion for transfer of "tag-along" cases has been met: the action filed by the United States "raises questions of fact common to the actions previously transferred." *In re Stirling Homex Corp. Securities Litigation,* 442 F.Supp. at 549. The United States' complaint makes a number of allegations that are virtually identical to those in the foreign governments' complaints, including,

*inter alia,* that the tobacco industry has known of the dangers of tobacco since the 1950's, that the tobacco industry conspired to conceal the health risks of smoking, that the tobacco industry has made numerous false representations to conceal the health risks of smoking, and that the tobacco industry has manipulated the nicotine levels in cigarettes to make them more addictive. *Compare* United States' Complaint ¶¶ 30–43, 73–75, 77–78 *with* Guatemala's First Amended Complaint ¶¶ 40, 51, 56–73; Nicaragua's Complaint ¶¶ 34, 45, 48, 49–64; Bolivin's Complaint ¶¶ 4–6; Venezuela's Complaint ¶¶ 47–102. Indeed, while some of these claims also are made in the union trust fund actions, the United States' lawsuit appears to have more questions of fact in common with the foreign government actions than it has with the union trust fund actions. Unlike the union trust fund actions, the lawsuit filed by the United States and the foreign government actions may involve questions regarding the relationship between the regulatory authority of each government and the alleged misconduct by the tobacco industry. The first criterion for consolidation is satisfied.

The second criterion does not support consolidation. No one could reasonably assert that the transfer of the case to the undersigned would be more convenient to the parties and witnesses than keeping it before Judge Kessler. Not only are the courtrooms of Judge Kessler and the undersigned in the same district, the same city and the same building, but they are even on the same floor. While the parties and witnesses may have to walk one hundred more feet from the elevator to reach the door of Judge Kessler's courtroom, the Court is confident that this increased burden will be tolerable.

The third criterion—whether consolidation would "promote the just and efficient conduct of the litigation," *In re Stirling Homex Corp. Securities Litigation,* 442 F.Supp. at 549—is the "most important" of the three criteria. 15 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H.

COOPER, FEDERAL PRACTICE AND PROCEDURE § 3863 at 535 (1986). Philip Morris argues that the actions should be consolidated to allow the efficient resolution of a number of discovery and legal questions that are common to the actions brought by the United States government and the foreign governments. Philip Morris also contends that the undersigned should make all pretrial rulings in order to ensure consistent rulings or justify any variations between rulings and that consistency is especially important because of the potential implications of these cases for U.S. foreign relations. Specifically, Philip Morris maintains that the foreign governments should have "no basis to conclude that the United States was afforded more favorable treatment simply because it was before a different judge." Philip Morris' Reply at 5.

The Court is not persuaded. Most of the factual similarities between the action filed by the United States and the foreign government cases are also shared by the union trust fund cases before Judge Kessler.[5] Judge Kessler therefore possesses or will acquire the same familiarity with the similar factual issues while handling the union trust fund cases as the undersigned possesses or will acquire while handling the foreign government litigation. As for discovery, the tobacco industry will be faced with rulings by two different judges on discovery requests made of it regardless of whether the consolidation motion is granted or denied, because the tobacco companies still will be defendants in cases pending before two different judges—the union trust fund cases and the foreign sovereign cases. While the tobacco industry's own discovery requests to foreign sovereigns and to the United States may be similar, they will not be identical, and the rulings on discovery disputes involving various sovereigns may well vary. The transfer of the action filed by the United States to the undersigned

therefore would not result in more just or efficient rulings on discovery.

Furthermore, while Philip Morris correctly argues that there are a number of legal questions concerning a government's regulation of tobacco that are only present in the governmental lawsuits, the factual predicate for each of these legal inquiries would be specific to each country. Because these inquiries would depend largely on the relationship that the specific country had with the tobacco industry, there likely would be little, if any, saving of resources by having the legal issues in the United States' case decided by the undersigned instead of by Judge Kessler. Finally, the United States' action is based on sections of the United States Code that permit only the United States to seek relief, thus presenting entirely different, perhaps crucial, legal issues from those implicated by the foreign governmental actions. The Court therefore concludes that most of the legal questions to be decided before trial are unique to the lawsuit filed by the United States, eliminating any increase in efficiency or justice to be gained by the consolidation of the U.S. and the foreign actions.

The last argument made by Philip Morris regarding the potential impact of inconsistent rulings on U.S. foreign relations carries some intuitive weight but does not survive close inspection. If the Court were to conclude that the lawsuit filed by the United States should be treated differently from the foreign governments' lawsuits in any material respects, the deciding judge—be it the undersigned or Judge Kessler—would clearly explain the distinctions made. Any ripples the decisions might cause in foreign relations would result from the fact that a federal judge in the United States treated the foreign governments differently from the United States government, not that the govern-

---

5. It is the factual, not the legal, similarities that both the MDL rules and this Court's Rules identify as controlling on the question

of transfer or consolidation. *See* Rule 1.1, Rules of the Judicial Panel on Multidistrict Litigation; LCvR 40.5(a)(3).

ments were treated differently *by different judges.* Judge Kessler is no less capable of deciding the similarities or differences between the United States' lawsuit and the foreign governments' lawsuits in a fair, just and efficient manner than is the undersigned. There is no assurance that either judge ultimately will see the cases as either the same in all material respects or different in some ways that might justifiably lead to different pretrial rulings. Suffice it to say that the importance of the cases and the possible foreign relations implications will be apparent enough to either Judge Kessler or the undersigned that the rulings, whatever they ultimately might be, will be clearly explained.

Finally, the decision not to consolidate these cases is not inconsistent with the MDL Panel's original intent in transferring the foreign governmental lawsuits to the undersigned for pretrial purposes. Both the MDL Panel's Order and the transcript of the hearing before the Panel indicate that the Panel intended its Order to encompass only lawsuits brought by *foreign* governments. In its Order transferring the cases, the MDL Panel was clearly focused on the need for the Court to decide issues specific to foreign governments: "... choice of law, ... *forum non conveniens,* ... applicability of the doctrine of remoteness, and ... the applicability of the *parens patriae* theory." MDL Order at 2. At oral argument, the judges of the MDL Panel, as well as counsel for Philip Morris himself, concentrated on the need for the Court to resolve issues unique to foreign governments. *See* Transcript of MDL Argument, Philip Morris' Motion to Consolidate, Exh. G ("Transcript") at 84–89. Philip Morris even raised the specter of potential "tag-along" cases at oral argument, but limited the suggestion to future lawsuits that might be filed by other foreign governments:

> We also have a large number of other foreign governments or government entities, provinces, standing in the wings. Since the briefing here, the province of

Ontario has issued a press release setting forth, on April 23rd, that it intends to bring a RICO action in the United States of a nature similar to those presently pending. And, according to press reports, we also have standing in the wings ready to sue in the United States, Russia, Belgium, Brazil, Ecuador, Peru and six Argentine provinces.

Transcript at 84–85. The Court will not expand its mandate from the MDL Panel to encompass the lawsuit filed not by one of these foreign sovereigns but by the United States.

SO ORDERED.