Conto v. Concord Hospital                    CV-99-166-JD   09/27/00
                        UNITED STATES DISTRICT COURT FOR THE
                              DISTRICT OF NEW HAMPSHIRE


Carol Conto

        v.                                    Civil No. 99-166-JD
                                              Opinion No. 2000 DNH 206
Concord Hospital, Inc.


                              O R D E R


        The plaintiff, Carol Conto, sued her former employer,

Concord Hospital, for sexual harassment that allegedly occurred

during her employment and for discrimination based on gender and

age in connection with the hospital's termination of her

employment.  The hospital moves for summary judgment (document

no. 24) and Conto objects.


                              Background[1]

        Conto worked as a security officer at Concord Hospital from

1993 until her termination on March 12, 1998.  Conto complains

that she experienced sexual harassment throughout the course of

her employment as a security officer.  Specifically, she recounts

the following incidents:  a coworker put his hands in the waist

_____

        [1]The background information is taken from the parties'
factual statements and exhibits and does not constitute factual
findings.  See Oliver v. Digital Equip. Corp., 846 F.2d 103, 105
(1st Cir. 1988).

of her pants and pulled her towards him; another coworker touched her lower leg; a supervisor and coworkers asked her personal questions about her sexual activities; at least one supervisor and other unidentified employees slapped her on the buttocks; and, she was frequently subjected to offensive language and gestures. Conto identifies a former supervisor, Vern Toppin, as being present at the pants-pulling incident as well as other incidents. Toppin left his job at the hospital in February of 1997.

Conto received three written disciplinary reports on December 4, 1997; January 30, 1998; and March 12, 1998. The first report cited her for refusing to give information to her superior officer about a security-related matter. The second report noted that she failed to log information about a license plate number that was relevant to a security investigation and that she routinely failed to check one of the buildings she was supposed to check on her shift. The third report documented her failure to respond properly to an activated fire alarm, and noted that Conto's employment was thereby terminated. On September 4, 1998, Conto filed a charge of discrimination with the New Hampshire Commission for Human Rights ("NHCHR"), and after receiving a right-to-sue notice from the EEOC, filed suit in this court on April 20, 1999.

2

## Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The record evidence is taken in the light most favorable to the nonmoving party, indulging all reasonable inferences in her favor. See Fernandes v. Costa Bros. Masonry, Inc., 199 F.3d 572, 577 (1st Cir. 1999). However, the court must consider the record as a whole, and may not make credibility determinations or weigh the evidence. See Reeves v. Sanderson Plumbing Prods., Inc., 120 S. Ct. 2097, 2110 (2000). The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. See DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). An issue of fact is genuine if there is sufficient evidence to permit a rational fact-finder, considering the evidence in the light most favorable to the nonmoving party, to find for either party. See Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

In response to a properly supported motion for summary judgment, the nonmoving party bears the burden to show a genuine

3

issue for trial by presenting significant material evidence in support of the claim.  See Tardie v. Rehabilitation Hosp., 168 F.3d 538, 541 (1st Cir. 1999).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Medina-Munoz, 896 F.2d at 8 (internal quotations and citations omitted).

If the moving party will bear the burden of proof at trial, summary judgment is appropriate only if "(1) the moving party initially produces enough supportive evidence to entitle the movant to judgment as a matter of law (i.e., no reasonable jury could find otherwise even when construing the evidence in the light most favorable to the non-movant), and (2) the non-movant fails to produce sufficient responsive evidence to raise a genuine dispute as to any material fact." Murphy v. Franklin Pierce Law Ctr., 882 F. Supp. 1176, 1180 (D.N.H. 1994) (citing Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115-17 (11th Cir. 1993)).  Summary judgment will not be granted as long as a reasonable jury could return a verdict in favor of the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

4

I.   Count I – Sexual Harassment

   A.   Timeliness of Filing

Concord Hospital contends that several of the alleged incidents of sexual harassment occurred more than 300 days before Conto filed a charge with the NHCHR, and therefore, any claim based on these allegations is untimely.  Title VII obligates a plaintiff to exhaust administrative remedies before filing suit in federal court.  See 42 U.S.C.A. § 2000e-5; Lawton v. State Mut. Life Assurance Co. of Am., 101 F.3d 218, 221 (1st Cir. 1996).  Complainants are required to file a charge with the Equal Employment Opportunity Commission ("EEOC") within 180 days of an unlawful employment practice, unless the complainant can file with an authorized state agency, in which case the limitations period may be extended to 300 days.  See 42 U.S.C.A. § 2000e-5(e)(1); EEOC v. Commercial Office Prods. Co., 486 U.S. 107, 110 (1988); Provencher v. CVS Pharmacy, 145 F.3d 5, 13 (1st Cir. 1998).  As the court explained in its order dated November 10, 1999, the 180-day rule applies to Conto's claim because the NHCHR lacked subject matter jurisdiction over her charge.  See Order (document no. 22), at 7-8.  Therefore, any alleged acts of discrimination that occurred more than 180 days prior to Conto's

filing with the NHCHR are untimely, absent an applicable exception.[2]

Conto filed her charge with the NHCHR on September 4, 1998, 176 days after her employment was terminated on March 12, 1998.[3] Consequently, only the last four days of Conto's employment could fall within the Title VII limitations period. However, Conto contends that all of her allegations are timely because the incidents that occurred prior to the limitations period have substantial similarity, repetition, and continuity to alleged events that occurred within the limitations period. Conto's argument raises the theory of serial violations, which is one

[2]Neither party has filed a copy of the relevant work-sharing agreement between the NHCHR and the EEOC with the court. See Order (document no. 22), at 8-9 (explaining significance of work-sharing agreements in context of timeliness of filing). For the purpose of deciding this motion only, the court assumes that Conto's filing of a charge with the NHCHR constituted a filing with the EEOC, even though the NHCHR lacked jurisdiction over the charge. See id.

[3]Conto is incorrect in claiming that her complaints to Concord Hospital personnel shield her from Title VII's filing requirement. Title VII clearly requires that a charge be filed with the EEOC or the appropriate state agency within the applicable limitations period. See 42 U.S.C.A. § 2000e-5(e)(1). "[T]he statute of limitations for a Title VII claim is not tolled while an employee exhausts any internal remedy the employer has made available." Thomas v. Eastman Kodak Co., 183 F.3d 38, 52 (1st Cir. 1999).

branch of the continuing violation doctrine.[4]  Serial violations consist of "a number of discriminatory acts emanating from the same discriminatory animus, [with] each act constituting a separate wrong actionable under Title VII."  Thomas v. Eastman Kodak Co., 183 F.3d 38, 53 (1st Cir. 1999) (quoting DeNovellis, 124 F.3d at 307).  Under this exception to the limitations period, untimely incidents may be included in a Title VII claim, but only if they are linked by similarity, repetition, or continuity to at least one actionable event that occurred within the applicable limitations period.  See Provencher, 145 F.3d at 14; DeNovellis, 124 F.3d at 307-08; Jensen v. Frank, 912 F.2d 517, 522 (1st Cir. 1990).  Therefore, the court first examines whether any of the alleged incidents of sexual harassment occurred on or after March 8, 1998, and if so, whether these incidents are independently actionable under Title VII.  See Kassaye v. Bryant College, 999 F.2d 603, 607 (1st Cir. 1993).

The plaintiff has the burden of demonstrating that some discriminatory act occurred within the limitations period, and an "inability to pinpoint" a single discriminatory action within the limitations period defeats the serial violation theory.  Mack v.

---

[4]Conto relies on the serial violations theory only, and accordingly only that theory is considered.  See Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 183 (1st Cir. 1989) (stating plaintiff must clearly articulate continuing violation argument).

Great Atl. & Pac. Tea Co., 871 F.2d 179, 183 (1st Cir. 1989).
Conto contends that she was subjected to swearing, obscene
gestures, and language of a sexual nature on a daily basis. She
also asserts that her coworkers frequently questioned her about
her sexual activity, and that on more than one occasion, she was
slapped on the buttocks by unidentified coworkers or possibly
supervisors. In addition, Conto claims that a coworker once
touched her lower leg. In her deposition testimony, Conto was
unable to specify when these events occurred. The record reveals
that all of the other alleged acts of sexual harassment occurred
more than 180 days before Conto filed her charge with the NHCHR.[5]

Conto's inability to identify a single specific act of
harassment that occurred in the last few days of her employment
weakens her argument under the serial violation theory. However,
given the evidence that some of the harassing conduct she claims
to have experienced occurred on a regular, if not daily, basis,
Conto has raised a genuine issue of fact as to whether some of
the alleged incidents occurred on or after March 8, 1998, in the
last few days of her employment. The court proceeds to consider
whether any one of these incidents rises to the level of sexual
harassment that is actionable under Title VII.

---

[5]As discussed in Part II below, the hospital's termination
of Conto's employment was not discriminatory, and therefore
cannot serve as an anchor for untimely incidents.

8

B.    Sufficiency of Sexual Harassment Claim

A claim of hostile work environment "requires a showing of severe or pervasive conduct," such that it constitutes a change in the terms and conditions of employment. Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 754 (1998); see also Meritor Sav. Bank v. Vinson, 477 U.S. 57, 67 (1986). The work environment must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998) (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 21-22 (1993)). In deciding whether harassment is actionable under Title VII, the court must consider the totality of the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. at 787-88 (quoting Harris, 510 U.S. at 23); see also Brown v. Hot, Sexy & Safer Prods., Inc., 68 F.3d 525, 540 (1st Cir. 1995) (applying Title VII analysis to Title IX case).

The swearing and obscene gestures Conto describes, while undoubtedly crude and boorish, do not rise to the level of

9

actionable harassment.  Verbal harassment is not "automatically discrimination because of sex merely because the words used have sexual content or connotations."  Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998).  Furthermore, the record does not indicate that Conto was subjected to this offensive behavior because of her gender, or that the comments and gestures were directed at her specifically.  See Winters v. ADAP, Inc., 76 F. Supp. 2d 89, 96 (D. Mass. 1999).  Instead, the record describes a work environment marked by indiscriminate foul language and sexual gestures.  Title VII was not intended to prescribe a "civility code" for the workplace, and Conto's disgust with her colleagues' behavior does not bring that behavior into the realm of sexual harassment.  See Oncale, 523 U.S. at 80.  While questions directed at Conto about her celibacy were hurtful and inappropriate, these questions were not sufficiently severe or pervasive to effectuate a change in the terms and conditions of her employment.  See id.

Similarly, Conto's allegation that a coworker once touched her lower leg is insufficiently severe or pervasive to qualify as physical sexual harassment.  Repeated touching of her buttocks, however, is another matter.  Casual contact with intimate body parts may or may not be offensive depending on the context in which it occurs and whether it is consensual.  See, e.g., id. at

10

81 (comparing patting buttocks of football player on playing field to patting secretary's buttocks). Conto alleges that various men at her workplace repeatedly slapped her buttocks without her consent. A reasonable person could conclude that this behavior was sufficiently severe or pervasive to alter the conditions of Conto's employment, and the record indicates that Conto herself perceived this behavior as abusive. Accordingly, the incidents of employees slapping Conto's buttocks are sufficiently severe and pervasive to constitute sexual harassment.

### C. Untimely Incidents

Because one form of actionable sexual harassment may have occurred at least once during the last few days of Conto's employment, thereby triggering a 180-day limitations period, the court returns to the serial violations argument to determine whether Conto may include untimely incidents of harassment in her suit. See Thomas, 183 F.3d at 54 (noting each new harassing incident triggers a limitations period). As the court stated above, the plaintiff must demonstrate that untimely incidents are linked by similarity, repetition, or continuity to the actionable event that occurred within the applicable limitations period. See Provencher, 145 F.3d at 14-15. Even then, the serial

11

violation theory fails "if the plaintiff was or should have been aware that [s]he was being unlawfully discriminated against while the earlier acts, now untimely, were taking place." Id. Therefore, the theory benefits only those individuals who do not realize they are experiencing discrimination until a series of discriminatory events has occurred, and then take prompt action once they make this realization. See id. at 14-15; see also Sabree v. United Bhd. of Carpenters & Joiners, 921 F.2d 396, 402 (1st Cir. 1990) (noting plaintiff's prior awareness is most important factor in application of serial violations theory).

Conto has neither alleged nor argued that prior to March of 1998, she was unaware that the harassing incidents she experienced constituted discrimination. The record evidence indicates that Conto was aware well before then that she was experiencing sexual harassment. Conto stated in her affidavit that she complained to her harassers about their conduct, was aware of other complaints about the security officers' behavior, and spoke with other female employees at the hospital about the offensive conduct of the male security officers. Conto also testified at her deposition that she yelled "sexual harassment" when a coworker pulled her by the pants on one occasion prior to February of 1997. See Pl.'s Dep. at 33-35. Moreover, she testified that she knew she could complain to the human resources

12

department under the hospital's non-discrimination policy, but chose not to because she believed it would be futile.  See Pl.'s Dep. at 77.  She also testified that she told another hospital employee that she believed she was being harassed.  See Pl.'s Dep. at 81.  This evidence, and Conto's failure to argue otherwise, indicates that she was aware prior to March of 1998 that she was experiencing sexual harassment.  Consequently, Conto may not include untimely incidents of harassment in her lawsuit under the serial violation doctrine, and her claim for sexual harassment is limited to occasions on which she was slapped on the buttocks on or after March 8, 1998.

D.  Affirmative Defense

Concord Hospital argues that it is entitled to summary judgment because it is undisputed that Conto failed to avail herself of the hospital's sexual harassment grievance procedures. An employer may prove an affirmative defense to vicarious liability for harassment by a complainant's supervisor, as long as the harassment does not culminate in a tangible employment action.  See Burlington, 524 U.S. at 765.  Conto contends that her termination was a tangible employment action.  However, Conto does not allege that her termination was a result of sexual harassment, and the court finds as a matter of law (as discussed

13

below) that her termination was not discriminatory.  See Lissau
v. Southern Food Serv., Inc., 159 F.3d 177, 182 (4th Cir. 1998)
("Tangible employment actions, if not taken for discriminatory
reasons, do not vitiate the affirmative defense.").  Therefore,
the hospital is entitled to avail itself of the Burlington
defense.

"The defense comprises two necessary elements:  (a) that the
employer exercised reasonable care to prevent and correct
promptly any sexually harassing behavior, and (b) that the
plaintiff employee unreasonably failed to take advantage of any
preventive or corrective opportunities provided by the employer
or to avoid harm otherwise."  Burlington, 524 U.S. at 765.
Because the hospital will bear the burden of proof on this issue
at trial, to win summary judgment, it must produce sufficient
supporting evidence such that no reasonable trier of fact could
find against it.  See Murphy, 882 F. Supp. at 1180.

The hospital has submitted documentary evidence of its
written policy against discrimination and sexual harassment.[6]

_____

[6]The court notes that the defendant did not properly
authenticate the documents attached to its motion as required by
Federal Rule of Civil Procedure 56(e).  See Fed. R. Civ. P.
56(e); Carmona v. Toledo, 215 F.3d 124, 131 (1st Cir. 2000).
However, the plaintiff has not objected to the evidence or
questioned its authenticity.  Therefore, the court accepts the
evidence as if it were properly authenticated for the purpose of

14

Conto admits having received an employee handbook containing the hospital's non-discrimination policy when she was hired in 1992. The 1992 version of the policy reads in part as follows:

> Sexual harassment is expressly forbidden in hospital employment practices. Any employee who feels he or she has been subjected to sexual harassment is urged to report the behavior to the Director of Personnel Services, being assured of fair treatment, confidentiality, and prompt action without jeopardy to the complainant. Any staff member found to be in violation of the hospital's policy or applicable legal statutes or regulations will be subject to immediate appropriate corrective and/or disciplinary action including, but not limited to, discharge from employment. Information regarding the nature and application of this policy is available in Personnel Services.

Def. Ex. G.

The hospital takes the position that having a written anti-harassment policy in place is sufficient to prove the first prong of the Burlington affirmative defense. However, the Burlington standard calls for employers to take reasonable steps to prevent and correct harassment. See Burlington, 524 U.S. at 765. Merely showing that an employer had a written policy and grievance procedure does not demonstrate as a matter of law that the employer took reasonable steps to prevent sexual harassment in its workplace. See, e.g., Brown v. Perry, 184 F.3d 388, 396 (4th

deciding this motion. See Copy Cop, Inc. v. Task Printing, Inc., 908 F. Supp. 37, 41 (D. Mass. 1995) (citing Cerqueira v. Cerqueira, 828 F.2d 863, 865 (1st Cir. 1987)).

15

Cir. 1999) (noting "mere promulgation of such a [anti-harassment] policy may well fail to satisfy the employer's burden"); <u>Hurley v. Atlantic City Police Dep't</u>, 174 F.3d 95, 118 (3d Cir. 1999) (stating there is no "absolute defense to a hostile work environment claim whenever the employer can point to an anti-harassment policy of some sort"); <u>cf.</u> <u>Shaw v. AutoZone, Inc.</u>, 180 F.3d 806, 811-12 (7th Cir. 1999) (holding employer took reasonable steps to prevent harassment where employer published and disseminated written anti-harassment policy that provided multiple mechanisms for grievance resolution and allowed complainant to circumvent supervisory chain of command, required employees to read the policy, and provided regular training about sexual harassment). In <u>Brown</u>, for example, the Fourth Circuit held that the employer met its burden in part by presenting evidence, in addition to the written anti-harassment policy, that the employer acted reasonably to prevent and correct sexual harassment. <u>See</u> <u>Brown</u>, 184 F.3d at 396. Similarly, the Second Circuit found that an employer met its burden where the record indicated the employer "endeavors to investigate and remedy problems reported by its employees." <u>Caridad v. Metro-North Commuter R.R.</u>, 191 F.3d 283, 295 (2d Cir. 1999).

Concord Hospital has not presented such evidence, instead relying solely on the existence of the written policy which does

16

not contain elements other courts have considered reasonable, such as multiple mechanisms for reporting harassment. See Shaw, 180 F.3d at 811. Moreover, the hospital has not shown that its anti-harassment policy was effective. See Lissau, 159 F.3d at 182-83 (noting employer's anti-harassment policy must be "effective"). Without a further showing, the hospital has not proven as a matter of law that it took reasonable measures to prevent sexual harassment in the workplace. Therefore, the hospital is not entitled to summary judgment on the Burlington affirmative defense.

## II. Counts II and III – Gender and Age Discrimination

Conto alleges that the hospital unlawfully terminated her employment because of her gender and age. Under Title VII, it is unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ." 42 U.S.C.A. § 2000e-2(a). Likewise, under the Age Discrimination in Employment Act ("ADEA"), it is "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29

17

U.S.C.A. § 623(a)(1). To decide a motion for summary judgment on either cause of action, the court applies the familiar McDonnell Douglas burden-shifting analysis. See Reeves, 120 S. Ct. at 2105 (applying McDonnell Douglas framework to ADEA claim where parties do not dispute its application); Smith v. F.W. Morse & Co., 76 F.3d 413, 421 n.4 (1st Cir. 1996); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

Under McDonnell Douglas, the plaintiff must first establish a prima facie case of discrimination. See Reeves, 120 S. Ct. at 2106; Cruz-Ramos v. Puerto Rico Sun Oil Co., 202 F.3d 381, 384 (1st Cir. 2000). Concord Hospital does not dispute that Conto has established prima facie cases for gender and age discrimination. The defendant then bears the burden of production, not persuasion, to demonstrate a legitimate, non-discriminatory reason for the challenged employment action. See Reeves, 120 S. Ct. at 2106; Cruz-Ramos, 202 F.3d at 384. If the defendant meets this burden, the plaintiff may then prove by a preponderance that the explanation proffered by the defendant is false and a mere pretext for discrimination. See Reeves, 120 S. Ct. at 2106. A trier of fact may "infer the ultimate fact of discrimination from the falsity of the employer's explanation." Id. at 2108. "In evaluating whether summary judgment [is] proper . . . [the court] weigh[s] all the circumstantial evidence of

18

discrimination, including the strength of the plaintiff's prima facie case and the employer's proffered reasons for its action, mindful that everything depends on individual facts." Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 7 (1st Cir. 2000) (internal quotation omitted).

Concord Hospital asserts that it terminated Conto's employment because of her repeated failures to adequately perform her job duties. These infractions, one of which resulted in a three-day suspension, are documented in written disciplinary reports the hospital submitted in support of its motion. The hospital has therefore articulated a legitimate, non-discriminatory reason for terminating Conto's employment. See Feliciano de la Cruz, 218 F.3d at 6 ("[T]o rebut the plaintiff's prima facie case, an employer need only produce enough competent evidence, taken as true, to enable a rational factfinder to conclude that there existed a nondiscriminatory reason for the challenged employment action" (internal quotation omitted)).

Conto admitted at her deposition that in the last few months of her employment, she refused to give her supervisor information that he asked for relating to a security matter; she deliberately violated the rule forbidding security officers from smoking while on duty; she lost a record of a license plate number; she regularly refused to check a building on her shift because it was

19

dirty; and she failed to follow proper procedures during a fire alarm. See Pl's Dep. at 126-39. These admissions are consistent with the written disciplinary reports submitted by the hospital.

Conto contends that the fact that she was disciplined three times in the last four months of her employment shows that the hospital was looking for an excuse to get rid of her. However, Conto has not pointed to any supporting evidence that she was disciplined differently from other security officers. Cf. Thomas, 183 F.3d at 62 (comparing supervisor's grades of plaintiff's performance with grades of other employees).[7] She also claims she was told that her superiors wanted her fired before she received any disciplinary reports. This allegation is insufficient to raise a trialworthy issue that the hospital's legitimate reasons for firing her are false or pretextual. Likewise, Conto's claim that she was the oldest full time security guard, and the only female guard, at the time she was

_____

[7]Conto states in her objection to the hospital's motion that she has requested information about discipline of other employees through discovery, but that the information is "presently unavailable." Pl. Obj. ¶ 36. Conto does not invoke Rule 56(f), nor has she moved for a discovery continuance. Instead, she has directly addressed the hospital's motion based on the supporting evidence she has now. Therefore, the court does not construe Conto's objection to request additional time for discovery before responding to the hospital's motion. See Rodriguez-Cuervos v. Wal-Mart Stores, Inc., 181 F.3d 15, 23 (1st Cir. 1999).

fired does not support an inference of discriminatory animus. See, e.g., Menzel v. Western Auto Supply Co., 662 F. Supp. 731, 742 n.5 (D.P.R. 1987) (noting mere fact that older employees did not last at company did not indicate discriminatory animus). Accordingly, the hospital is entitled to summary judgment on Conto's claims of gender and age discrimination.

## Conclusion

For the foregoing reasons, the defendant's motion for summary judgment (document no. 24) is granted for Count I except as to incidents occurring on or after March 8, 1998, in which the plaintiff's buttocks were touched by the defendant's employees. The defendant's motion is granted for Counts II and III.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
District Judge

September 27, 2000

cc:  Kathleen C. Peahl, Esquire
     Charles A. Russell, Esquire

21