Gauthier v. NH Dept. of Corrections    CV-98-298-M    08/28/00
                    UNITED STATES DISTRICT COURT

                      DISTRICT OF NEW HAMPSHIRE


Kathleen Lohnes Gauthier,
      Plaintiff

      v.                                    Civil No. 98-298-M
                                            Opinion No. 2000 DNH 190
New Hampshire Department
of Corrections,
      Defendant


                           O R D E R


      Kathleen Lohnes Gauthier brings this action pursuant to

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et

seq., seeking damages for what she claims was a hostile work

environment and quid pro quo sexual harassment.  Gauthier's

former employer and defendant in this proceeding, the New

Hampshire Department of Corrections, denies liability and has

moved for summary judgment.  Gauthier objects.


                        **Standard of Review**

      Summary judgment is appropriate when the record reveals "no

genuine issue as to any material fact and . . . the moving party

is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In this context, "a fact is 'material' if it potentially affects the outcome of the suit and a dispute over it is 'genuine' if the parties' positions on the issue are supported by conflicting evidence." Intern'l Ass'n of Machinists and Aerospace Workers v. Winship Green Nursing Center, 103 F.3d 196, 199-200 (1st Cir. 1996) (citations omitted). And, when ruling upon a party's motion for summary judgment, the court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990).

## Background

Viewing the record in the light most favorable to plaintiff, the material facts appear as follows. Gauthier began work at the New Hampshire Department of Corrections ("DOC") in August of 1994, as a correctional trainee at the Men's Prison in Concord, New Hampshire. In the Spring of 1995, she attended the

correctional academy, where she received training in, among other things, the DOC policy prohibiting sexual harassment and its procedures for reporting complaints.

After completing her training at the correctional academy, Gauthier was assigned to work at the Women's Prison in Goffstown. In June of 1996, at her request, she was transferred to the Men's Prison. Gauthier resigned from her position at the Men's Prison in June of 1997, complaining that she was the subject of ongoing sexual harassment by her co-workers and supervisors. On September 5, 1997, Gauthier filed a complaint with the New Hampshire Human Rights Commission (the "HRC"). In February of 1998, the Equal Employment Opportunity Commission issued a "right to sue letter," and on May 11, 1998, she initiated this suit.

Gauthier alleges that she was subjected to sexual harassment by her immediate supervisor, Sergeant Gathercole, as well as several other DOC employees, including Sergeant Thyng, Sergeant Tarillo, Corporal Brochu, Officer Patrick, Officer Kingsbury,

3

Officer Lacert, and Counselor Hart. She concedes, however, that she failed to exhaust her administrative remedies with regard to the alleged conduct of Officers Kingsbury and Lacert, which apparently occurred while Gauthier was assigned to the Women's Prison, during 1995 and 1996. She also acknowledges that part of Officer Patrick's alleged conduct occurred in 1994 and 1995 and, therefore, more than 300 days before she filed her complaint with the HRC. See 42 U.S.C. § 2000e-5(e)(1).

Gauthier's complaint includes references to numerous incidents of alleged sexual harassment by her co-workers and supervisors. They need not be recounted in detail. It is sufficient to note that, if the allegations are true (and they must be accepted as true at this stage), plaintiff was subjected to fairly pervasive, severe, and ongoing sexual harassment, which included sexually explicit jokes, comments, and remarks by Sergeant Gathercole. Complaint at para. 10. These comments included Gathercole's alleged statements about sexually explicit dreams he had had about Gauthier, references to his having

4

masturbated while at work, and questions such as whether she put sunscreen on her nipples when she went to the beach. Other incidents involved DOC employees touching plaintiff inappropriately, commenting on her breasts, discussing how exotic dancers they had seen frequently shaved their pubic areas, and telling Gauthier things such as how they would like to "bend [plaintiff] over his desk for payment." Plaintiff's deposition at 41.

The DOC's sexual harassment policy provides that any employee who believes that he or she has been subjected to unlawful discrimination "may file a complaint in writing with a Discrimination Review Committee." DOC Policy and Procedure Directive 2.15, Exhibit G to defendant's memorandum (document no. 14). The State of New Hampshire Policy of Sexual Harassment, which is attached to the DOC sexual harassment policy, provides that any employee of the State may file a complaint of sexual harassment, either orally or in writing, to the Director of the Division of Personnel. Alternatively, "[c]omplaints may also be

5

accepted by a supervisor, who shall then refer the complaint to the Director." Id., at Section III(A).

Additionally, after completing sexual harassment training, each DOC employee is required to sign a form, acknowledging that he or she has received such training. That form further requires the employee to acknowledge that "I have the right and the responsibility to either communicate [complaints of sexual harassment] directly to the harasser or to a non-involved supervisor." Acknowledgment of Sexual Harassment Training, Exhibit C to defendant's memorandum. Thus, it is evident that employees of the DOC may, pursuant to the sexual harassment policies implemented by both the State and the DOC, report incidents of alleged sexual harassment either orally or in writing. And, such reports may be directed to one or more of several individuals, including the alleged harasser or a non-involved supervisor.

6

Gauthier admits that during the course of her employment she never filed a written complaint of sexual harassment with her supervisor(s), the Discrimination Review Committee, or the Director of Personnel. She does, however, say that she repeatedly complained of unwelcome sexual harassment to Corporal Brochu, Lieutenant Dragon, and Lieutenant Hogan. Defendant vigorously disputes that claim. See Defendant's memorandum at 24-25. Nevertheless, for purposes of ruling on defendant's motion for summary judgment, the court must accept it as true.

According to Gauthier, none of her complaints resulted in any sort of investigation nor did they serve to stop the harassment (again, defendant denies that claim). Following her resignation, however, Gauthier, through her attorney, filed a written complaint of sexual harassment. At that point, defendant promptly began an investigation into Gauthier's claims. That investigation revealed that Counselor Hart, Sergeant Tarillo, and Sergeant Gathercole had all engaged in inappropriate sexual conduct. Tarillo and Hart were disciplined and, because of the

7

severity of Gathercole's conduct, his employment was terminated.

**Discussion**

I. Exhaustion of Administrative Remedies.

Title VII obligates plaintiffs to exhaust administrative remedies before filing suit in federal court. See Lawton v. State Mutual Life Assurance Co. of America, 101 F.3d 218, 221 (1st Cir. 1996). The general rule provides that charges of discrimination must be filed with the EEOC within 180 days of the discriminatory act, unless the charge is first filed with an authorized state agency, in which case it must be filed with the EEOC within 300 days of the discriminatory act. See 42 U.S.C.A. § 2000e-5(e); E.E.O.C. v. Commercial Office Products Co., 486 U.S. 107, 110 (1988).

The purpose of requiring an employee to file a charge of discrimination is "to provide the employer with prompt notice of the claim and to create an opportunity for early conciliation."

8

Lattimore v. Polaroid Corp., 99 F.3d 456, 464 (1st Cir. 1996).
Plainly, it would frustrate that purpose "if the employee were permitted to allege one thing in the administrative charge and later allege something entirely different in a subsequent civil action." Id. Consequently, the Court of Appeals has held that "the scope of the civil complaint is . . . limited by the charge filed with the EEOC and the investigation which can reasonably be expected to grow out of that charge." Powers v. Grinnell Corp., 915 F.2d 34, 38 (1st Cir. 1990) (citation and quotation marks omitted).

Here, the complaint Gauthier filed with the HRC addresses only alleged acts of sexual harassment while she was employed at the Men's prison. It makes no reference to alleged sexual harassment, whether committed by Kingsbury, Lacert, or others, while she was employed at the Women's Prison. And, as noted above, Gauthier concedes that any claims relating to alleged sexual harassment while she was at the Women's Prison occurred more than 300 days prior to the filing of her complaint with the

9

HRC.  Consequently, only Gauthier's claim that she was subjected to unlawful sexual harassment while she was employed at the Men's Prison requires analysis.

As to Gauthier's claims regarding the alleged harassment of Brochu and Tarillo, defendant says that she cannot show that such conduct occurred within 300 days of her having filed the complaint with the HRC.  Instead, defendant says that, at best, all Gauthier can show is that Brochu and Tarillo sexually harassed her at some point during her tenure at the Men's Prison, at least four months of which occurred outside of the 300-day window established by Title VII.  See Defendant's Memorandum at 14 ("Plaintiff is unable to meet this burden, since she admits that she does not know when these events [relating to Brochu and Tarillo] happened, and thus cannot established that they occurred [within 300 days of filing her complaint].")  Gauthier disagrees, saying that while she cannot identify the precise dates on which Brochu and Tarillo harassed her, she can say with confidence that their unlawful conduct "occurred regularly during the year [she]

10

was assigned to the men's prison," <u>see</u> plaintiff's responses to interrogatories, and such conduct occurred "repeatedly" and "on many occasions."  <u>See</u> Plaintiff's deposition at 28-31; Plaintiff's complaint filed with the HRC.

At this stage of the litigation, therefore, Gauthier has alleged sufficient facts to support a claim that the conduct ascribed to Brochu and Tarillo constitutes a "continuing violation" under Title VII, at least a portion of which occurred within the 300-day limit.  <u>See generally</u>, <u>Thomas v. Eastman Kodak Co.</u>, 183 F.3d 38, 53-54 (1st Cir. 1999), <u>cert</u>. <u>denied</u>, 120 S.Ct. 1174 (2000); <u>Lawton</u>, 101 F.3d 218, 221 (1st Cir. 1996). Consequently, to the extent defendant asserts that, as a matter of law, Gauthier's claims relating to the alleged conduct of Brochu and Tarillo is time barred, the court disagrees.

II.  <u>Title VII and Employer Liability</u>.

Title VII of the Civil Rights Act of 1964 (as amended) makes it unlawful for employers "to fail or refuse to hire or to

11

discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a). As a result, the Supreme Court has held that "sexual harassment so 'severe or pervasive' as to 'alter the conditions of [the victim's] employment and create an abusive working environment' violates Title VII." Faragher v. City of Boca Raton, 524 U.S. 775, 786 (1998) (quoting Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986)).

The Supreme Court has also distinguished between two types of sexual harassment claims that are actionable under Title VII: quid pro quo harassment and hostile work environment harassment.

> [In Meritor], we assumed, and with adequate reason, that if an employer demanded sexual favors from an employee in return for a job benefit, discrimination with respect to terms or conditions of employment was explicit. Less obvious was whether an employer's sexually demeaning behavior altered terms or conditions of employment in violation of Title VII. We distinguished between quid pro quo claims and hostile environment claims and said both were cognizable under Title VII, though the latter requires harassment that is severe or pervasive. The principle significance of

12

>    the distinction is to instruct that Title VII is
>    violated by either explicit or constructive alterations
>    in the terms or conditions of employment and to explain
>    the latter must be severe or pervasive.

Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 752

(1998). See generally Meritor, 477 U.S. at 65. In this case,

Gauthier claims she was subject to both quid pro quo and hostile

environment sexual harassment. With regard to the former, her

claim appears to be limited to the allegation that Sergeant Thyng

repeatedly requested that she go out with him, prompting Gauthier

to fear that if she refused those requests, Thyng would hinder

her ability to secure a transfer away from Sergeant Gathercole

(the DOC employee who Gauthier says subjected her to the most

offensive and pervasive harassment).

Defendant moves for summary judgment, asserting that

Gauthier cannot, as a matter of law, point to sufficient facts to

hold it liable for the allegedly wrongful conduct of either its

supervisory or non-supervisory employees. Gauthier objects.

13

A.    Employer Liability for Non-Supervisory Employees.

Under Title VII, employers are not strictly liable for unlawful sexual harassment committed by their employees.  See generally Burlington Industries, supra.  Thus, as the Court of Appeals for the Seventh Circuit has held:

> The liability of an employer for sexual harassment by one nonsupervisory employee of another is not strict. The plaintiff must prove that the employer was negligent in having failed to discover and prevent it. The sheer pervasiveness of the harassment might support an inference that the employer must have known of it, as might a complaint from someone other than the victim.

Zimmerman v. Cook County Sheriff's Department, 96 F.3d 1017, 1018-19 (7th Cir. 1996).

Here, Gauthier has pointed to sufficient facts to withstand defendant's motion for summary judgment as to the allegedly unlawful conduct of its non-supervisory employees.  First, Gauthier alleges that she repeatedly informed supervisory employees of the sexual harassment to which she claims to have been subjected.  And, it would appear that under the sexual

14

harassment policies implemented by DOC and the State of New Hampshire, making such oral reports to supervisory employees was both permissible and sufficient to put defendant on notice of her claims. See generally The State of New Hampshire Policy on Sexual Harassment, Section III (A) ("Complaints may also be accepted by a supervisor, who shall then refer the complaint to the Director."). Additionally, defendant was aware, as early as February of 1996, that Officer Patrick had sexually harassed a female co-worker at the Men's Prison. See Report of Sexual Harassment Investigation (February 20, 1996), Exhibit 8 to plaintiff's memorandum. Finally, Gauthier has submitted portions of Counselor Hart's testimony in another Title VII suit, in which Hart testified that he discussed with the Warden of the Men's Prison in the summer of 1997 his belief that correctional officers were engaging in inappropriate sexual discussions and banter in various sections of the prison. See Exhibit 5 to plaintiff's memorandum, Trial transcript from White v. Dept. of Corrections, Day 2 at 156-57.

15

Viewing the record in the light most favorable to Gauthier, as the court must at this stage of the litigation, there is sufficient evidence to permit a reasonable trier of fact to conclude that defendant either knew or should have known of the sexual harassment to which Gauthier was allegedly being subjected. Crediting Gauthier's allegations as true, the record suggests that such discrimination was both pervasive and severe. It also suggests that defendant had actual knowledge of Gauthier's complaints, which she claims to have made to various supervisory employees of defendant. At a minimum, Gauthier has pointed to adequate evidence in the record, if credited as true, to support a trier of fact's conclusion that defendant should have known that Gauthier was being subjected to sexual harassment and was negligent in failing to stop it.

B. <u>Employer Liability for Supervisory Employees</u>.

Generally, employers are vicariously liable for sexual harassment carried out by their supervisory employees. <u>See generally</u> <u>Burlington Industries</u>, <u>supra</u>. However, if the alleged

16

harassment results in no tangible employment action (e.g.,

discharge, adverse transfer, etc.), an employer may avail itself

of a two-part affirmative defense.

> An employer is subject to vicarious liability to a
> victimized employee for an actionable hostile
> environment created by a supervisor with immediate (or
> successively higher) authority over the employee.  When
> no tangible employment action is taken, a defending
> employer may raise an affirmative defense to liability
> or damages, subject to proof by a preponderance of the
> evidence.  The defense comprises two necessary
> elements: (a) that the employer exercised reasonable
> care to prevent and correct promptly any sexually
> harassing behavior, and (b) that the plaintiff employee
> unreasonably failed to take advantage of any
> preventative or corrective opportunities provided by
> the employer or to avoid harm otherwise. . . . No
> affirmative defense is available, however, when the
> supervisor's harassment culminates in a tangible
> employment action, such as discharge, demotion, or
> undesirable reassignment.

Burlington Industries, 524 U.S. at 765.

Here, the parties dispute whether Gauthier suffered any

"tangible employment action."  Defendant denies that any

occurred, while Gauthier argues that her "constructive discharge"

should, as a matter of law, constitute a tangible employment

17

action.  That legal question appears open to debate and has yet to be resolved in this circuit though, as defendant points out, in light of the Court's discussion in <u>Burlington Industries</u>, an employee's decision to resign in the wake of sexual harassment is unlikely to <u>automatically</u> constitute a "tangible employment action."  <u>See</u> Defendant's reply memorandum (document no. 17) at 4.  <u>See also</u> <u>Elmasry v. Veith</u>, 2000DNH005, Civil No. 98-696-JD (D.N.H. January 7, 2000) ("Determining whether a constructive discharge can constitute a tangible employment action requires examination of the facts peculiar to each case.  There are certainly circumstances under which a constructive discharge may qualify as a tangible employment action.").  Nevertheless, for the reasons discussed below, the court need not address that issue at this time.

Even if the court were to conclude that Gauthier's constructive discharge was not a tangible employment action (thereby affording defendant the opportunity to avail itself of the affirmative defense discussed above), defendant has failed to

18

establish that Gauthier "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer." Burlington Industries, 524 U.S. at 765. According to Gauthier, she reported at least some incidents of sexual harassment to supervisory employees of the DOC. And, under the sexual harassment policies implemented by the State and the DOC, making oral reports to supervisory personnel is one means by which an employee may notify his or her employer of unlawful sexual harassment in the workplace.

Consequently, the court holds that the record as presently developed precludes defendant from availing itself of the two-part affirmative defense identified in Burlington Industries.

## Conclusion

To be sure, the parties vigorously dispute whether Gauthier reasonably availed herself of the various options available to her to report alleged incidents of sexual harassment. Had she simply chosen to file a written report with DOC, the record

19

suggests that DOC would have undertaken a prompt investigation and disciplined those employees who had engaged in inappropriate conduct. Consequently, Gauthier might well have spared herself any further harassment. Nevertheless, under the applicable sexual harassment policies, it appears that one means by which DOC employees may report incidents of alleged sexual harassment is by orally informing a supervisor. Gauthier claims to have done just that and, while defendant disputes that assertion, the existence of that genuine issue of material fact precludes the court from ruling that defendant is entitled to judgment as a matter of law.

For the foregoing reasons, defendant's motion for summary judgment (document no. 14) is granted in part and denied in part. Because the alleged incidents of unlawful sexual harassment directed at Gauthier while she was employed at the Women's Prison (i.e., those allegedly involving Kingsbury and Lacert) occurred more than 300 days prior to her having filed her complaint of discrimination, Gauthier is barred from recovering for them. As

to her remaining claims (relating to her employment at the Men's Prison from June of 1996 through June of 1997), however, defendant has failed to demonstrate that it is entitled to judgment as a matter of law.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

August 28, 2000

cc:  Michael J. Sheehan, Esq.
    Nancy J. Smith, Esq.

21